COUNTRY MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, *v.* WALDMAN MERCANTILE CO., INC., *et al.*, Defendants-Appellants.

Fifth District    No. 80-296

■■■■■■

Opinion filed December 22, 1981.

Cornelius Thomas Ducey, Jr., of Ducey, Feder & Ducey, Ltd., of Belleville, for appellants.

James E. Gorman, of Reed, Armstrong, Gorman and Coffey, of Edwardsville, for appellee.

PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Country Mutual Insurance Company, brought an action for declaratory judgment requesting judicial determination whether an exclusion clause in an insurance policy issued by it to T & L Wholesalers, Inc. (T & L), precluded liability for fire damage to merchandise belonging to Waldman Mercantile Company, Inc. (Waldman), Pay Less Discount Systems, Inc. (Pay Less), and A. B. Lester Bookseller, Ltd. (Lester), who are T & L's tenants. The fire insurer for Waldman and Pay Less, St. Paul Insurance Company, was also made a party to this action. The trial court found that the tenant's merchandise was in the care, custody or control of T & L and that the limitation of liability found in an exclusion clause of the insurance policy precluded all claims by the defendants. From this determination, defendants Waldman and St. Paul Insurance Company appeal.

The issues raised on appeal are: (1) whether the merchandise belonging to Waldman, Pay Less, and Lester was under the care, custody or control of T & L so as to fall within the exclusion clause of the insurance policy; and (2) whether the failure of the plaintiff to offer defendants payment under a provision in one of the liability endorsements of its policy estops plaintiff from claiming that the defendants' personalty was under T & L's care, custody or control.

The facts as established by the evidence presented in the trial court are relatively simple. Plaintiff issued an insurance policy covering fire and other specified perils to T & L, which owned and operated the Wild Goose Bargain Center, a discount store located in Moro, Illinois. An endorsement to the policy, designated "Comprehensive General Liability Insurance Endorsement," provided liability coverage for property dam-

age but specifically excluded "property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." Another endorsement called the "SMP General Property Form" contained the following language:

> "PERSONAL PROPERTY OF OTHERS: The insured may apply at each location up to 2%, but not exceeding $2,000, of the limit of liability specified for coverage B—Personal Property at such location, as an additional amount of insurance, to cover for the amount of the owners thereof (other than the named insured) direct loss by a peril insured against to personal property, similar to that covered by this policy, belonging to others while in the care, custody or control of the named insured and only on the described premises or within 100 feet thereof."

On December 22, 1976, a fire occurred at T & L's discount store which destroyed the building and merchandise located therein. According to the testimony of Thomas E. Anderson, T & L's president, T & L's employees were on duty at the time the fire began. The merchandise destroyed included that which belonged to Waldman, Pay Less and Lester, each of whom leased space in T & L's store.

The business arrangements between T & L and the defendants who leased space in the discount store were essentially the same except that Waldman operated under a written agreement while Pay Less' and Lester's agreements were oral. Each of the businesses involved in the discount store owned its own merchandise, and each displayed its merchandise in separate areas. T & L sold hardware and automotive supplies, Waldman sold clothing, Pay Less sold drugs, and Lester sold books. Each business also hired its own employees. Waldman, however, occasionally hired T & L employees to perform work for it, and, under the terms of the lease, T & L was authorized to hire sales personnel for Waldman. The lessees' merchandise was shipped to the store either by their own employees or commercial carrier. The merchandise was usually brought into the store by the lessees' employees, but T & L employees occasionally brought items into a storage area from the loading docks. The lessees were fully responsible for maintaining their own displays and shelves, and their employees came to the store about once or twice a week during regular business hours to check and restock the merchandise.

T & L, in addition to leasing space to the other businesses, operated the cash register where all sales from the bargain center were made, and it charged the lessees a percentage of the sales for this service. Merchandise belonging to the lessees was marked with tags which identified the business which owned it, and through this method T & L kept accounts of each lessee's sales. Customer refunds were also handled by T & L employees. The hours for the conducting of business were determined by

T & L. T & L was the only business which had keys to the premises and was responsible for cleaning and maintaining the building and the surrounding area. Further, T & L provided some security in the form of alarm systems and the employment of security personnel during the Christmas rush.

Testimony regarding the issuance of the insurance policy was given by Steve Yoder, an underwriter for plaintiff, and T & L's president, Mr. Anderson. Mr. Yoder stated that he told Mr. Anderson that the policy only covered personal property belonging to T & L and that the lessees' property was excluded unless he purchased additional coverage by paying another premium. Mr. Anderson testified that it was his understanding that the lessees would obtain their own insurance on their personalty and that he wished to cover only his own merchandise when he took out the policy.

Defendants first maintain that the trial court erred in holding that the lessees' merchandise was in the care, custody or control of T & L at the time that it was destroyed by fire. They argue that, at most, T & L had only "limited access" to the personalty and that this is insufficient to constitute care, custody or control. We disagree and affirm the trial court's judgment in this regard.

In view of the controversy which has given rise to the case at bar, it seems pertinent to emphasize the seemingly obvious fact that liability insurance coverage, as contrasted with insurance coverage for property of the insured which is damaged or destroyed, is designed to indemnify the insured from liability to third persons resulting from the breach of some duty by the insured. Liability for damage to property which is in the insured's "care, custody or control" is frequently excluded from liability coverage. (12 G. Couch, Cyclopedia of Insurance Law §§44:424 through 44:434 (2d ed. 1964); Annot., 62 A.L.R.2d 1242 (1958).) As we have previously stated, the policy endorsement which is the basis of this appeal contained such a provision.

The Illinois cases suggest a two-pronged test for determining whether property is in the care, custody or control of an insured so as to preclude liability under such exclusion clauses. Where the property damaged is within the possessory control of the insured at the time of the loss and is a necessary element of the work performed, the property is deemed in the care, custody or control of the insured. (See *Stewart Warner Corp. v. Burns International Security Services, Inc.* (7th Cir. 1975), 527 F.2d 1025.) While the control exercised by the insured must be exclusive, it need not be continuous, and if the insured has possessory control at the time the property is damaged, the exclusion clause will apply.

In the case at bar, the fire which destroyed the property occurred

while the insured's employees were, for all practical purposes, in full charge of the property. It was T & L employees who were on duty at the time the fire began and it was T & L which was primarily responsible for protecting the merchandise while on the premises. It is also significant that only T & L personnel had keys to the premises and, consequently, had access to the merchandise at all times. Defendants suggest a lack of exclusive control because the lessees' employees were responsible for taking inventory and restocking the merchandise. We do not agree that such access to the merchandise amounts to "limited access" on the part of T & L. Indeed, the term could more aptly be applied to the lessees, whose employees could reach the personalty only during regular business hours. Therefore, we find that T & L had exclusive possessory control of the lessees' property at the time of the loss.

The question remains whether the property was a necessary part of the "work performed" by the insured. We conclude that it was. The business arrangement between T & L and its lessees falls within the definition of a consignment in that the lessees retained title to the merchandise but delivered possession of it to plaintiff for sale. (Cf. F. F. Ide Manufacturing Co. v. Sager Manufacturing Co. (1898), 82 Ill. App. 685; Black's Law Dictionary 278 (5th ed. 1979).) Under the agreement, T & L was required to sell the lessees' merchandise and in return was to receive a percentage of the sales. The work performed by T & L was essentially a sales service. In light of the relationship between the insured and its lessees and the nature of the business arrangement, we find that the lessees' property was a necessary element of the work performed.

Since the property damaged was both within the exclusive possessory control of plaintiff's insured at the time of the loss and was an essential element of the work performed, we conclude that the property was within the care, custody or control of the plaintiff's insured and, therefore, the exclusion clause of the policy was applicable in the instant case. The trial court properly ordered that the exclusion clause precluded liability of the plaintiff for the loss of defendants' merchandise, and we affirm its judgment.

The defendants alternatively argue that since the plaintiff made no attempt to settle the claims of the lessees under the "SMP General Property Form" endorsement, it construed the situation to be one where the lessees' property was not under the care, custody or control of T & L. Thus, according to defendants, the plaintiff should be estopped from claiming that the property was within its insured's care, custody or control. We reject this contention for two reasons. First, the record does not indicate the cause for plaintiff's failure to make payment under the provision relied upon by the defendants. In fact, the testimony regarding the issuance of the policy indicated that both the plaintiff and its insured did

not intend the coverage to include any property other than that which belonged to T & L. Additionally, the language of the provision upon which defendants rely suggests that the provision is not applicable unless the insured requested such coverage. The provision states that the insured "may" apply a percentage of the coverage "as an additional amount insurance" to cover the property of others. As already indicated, the evidence suggests that the insured did not intend to cover any property other than its own. In view of the foregoing, we reject defendants' claim based upon estoppel.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

KARNS, P. J., and HARRISON, J., concur.