BITUMINOUS CASUALTY CORPORATION, Plaintiff-Appellee, v. LELAND FULKERSON, SR., *et al.*, d/b/a Fulkerson Oil, *et al.*, Defendants-Appellants.

Fifth District   No. 5—89—0790

Opinion filed May 3, 1991.

CHAPMAN, J., concurring in part and dissenting in part.

Appeal from the Circuit Court of White County; the Hon. Leo T. Desmond and the Hon. Robert M. Keenan, Jr., Judges, presiding.

James L. Van Winkle, of Van Winkle & Van Winkle, of McLeansboro, for appellants LeLand Fulkerson, Sr., and M.L. Fulkerson.

James R. Conley, Jr., of Carmi, for appellant Paul Puntney.

Douglas A. Enloe, of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Bituminous Casualty Corporation (Bituminous), sold a comprehensive general liability insurance policy to Paul Puntney, an oil well service contractor. When Puntney was subsequently sued by Leland and M.L. Fulkerson, Bituminous brought this action against both Puntney and the Fulkersons to obtain a declaratory judgment that the damages sought by the Fulkersons in their lawsuit were excluded from coverage under Puntney's insurance policy and that Bituminous therefore had no obligation to either defend Puntney or to pay any judgment which might be rendered against him in that litigation. After filing his answer to Bituminous' complaint, Puntney sought leave to assert as an affirmative defense that Bituminous was estopped from denying coverage. Following a hearing, the circuit court issued an order denying Puntney's request to raise his proposed affirmative defense. Thereafter, the court entered summary judgment in favor of Bituminous on its declaratory judgment action. Puntney and the Fulkersons now appeal. On this appeal both Puntney and the Fulkersons contend that the circuit court erred in granting summary judgment to Bituminous. Puntney alone further contends that the circuit court abused its discretion in denying him leave to assert his affirmative defense. For the reasons which follow, we reverse and remand with directions.

The litigation underlying Bituminous' declaratory judgment action commenced in May of 1987, when Leland and M.L. Fulkerson filed suit against Paul Puntney in the circuit court of White County. In their

complaint, the Fulkersons alleged that they had hired Puntney to set a "Guiberson packer" in an oil well they were constructing. Although the record is not entirely clear on this point, we understand that a packer is essentially a cylindrical plug which can be inserted into the casing which lines oil well bores. Its purpose is to enable sections of the well to be isolated so that work can be performed on limited or specific areas of the oil-bearing formation. When installed properly, packers are supposed to be readily removable from the well's casing.

The well for which Puntney was employed to set the packer was known as the Tom Ramsey No. 1. The well was evidently several thousand feet deep. The Fulkersons alleged that at a depth of 2,062 feet there was a collar in the well's casing where two sections of the casing joined. They further alleged that Leland Fulkerson warned Puntney of the collar's location so that Puntney would not set the packer there. According to count I of the Fulkersons' complaint, however, Puntney acted negligently in setting the packer, as a result of which it became lodged in the collar and, despite repeated efforts, could not be removed. With the well blocked in this way, it could not be used and had to be abandoned. The Fulkersons averred that they were ultimately forced to drill a second well to tap into the oil formation and that the new well was inferior to the original.

Count II of the Fulkersons' complaint contained the same basic factual allegations as count I, but was premised on breach of implied warranty rather than negligence. In both counts, the Fulkersons sought damages for the amounts they had expended in drilling and operating the Tom Ramsey No. 1 well, for the losses they had incurred in attempting to retrieve the packer and repair the well after the packer became stuck, for the expenses they had incurred in drilling the replacement well, and for the loss of oil production they allegedly sustained as a result of having to drill the replacement well.

During the period relevant to the Fulkersons' complaint, Puntney held a comprehensive general liability insurance policy issued by Bituminous. Puntney had purchased this policy specifically for his business as an oil well service contractor, and when the Fulkersons filed suit against him, Bituminous retained counsel to represent him in that action. Approximately two months after the Fulkersons brought their complaint, however, Bituminous filed a separate declaratory judgment action in the circuit court of White County pursuant to section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—701) against both the Fulkersons and Puntney. In this action, Bituminous contended that the insurance policy it had issued to Puntney did not cover any of the damages at issue in the litigation filed by the

Fulkersons. The basis for Bituminous' claim was an exclusion in the policy which stated that the insurance did not apply to damage to "property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control."

The insurance policy containing this exclusion and a copy of the complaint filed against Puntney by the Fulkersons in the underlying action were attached to Bituminous' complaint as exhibits. Based upon these exhibits and the allegations in its own complaint, Bituminous asked the circuit court to declare that it had no duty to defend Puntney in the action brought against him by the Fulkersons and that it had no obligation under the policy to pay any judgment which might be rendered against Puntney in that action.

The Fulkersons and Puntney each opposed Bituminous' action on the merits. After discovery was initiated, Puntney also sought leave to raise as an affirmative defense that Bituminous was estopped by its conduct from denying that its insurance policy provided coverage. As grounds for his estoppel claim, Puntney alleged that when the Fulkersons first sued him, Bituminous retained a law firm to defend him in that case. Puntney further contended that under the express terms of the insurance policy, he had a contractual obligation to cooperate with the company in the conduct of the litigation and to provide it with all relevant documentation in his possession as soon as practicable. Pursuant to this contractual obligation, Puntney collected up all of the documents he had which were relevant to the Fulkersons' claim and turned them over to the law firm.

After Puntney surrendered the documents to the law firm, Bituminous filed its declaratory judgment action seeking to avoid coverage under the policy. That Bituminous had a right to challenge coverage by way of a declaratory judgment action was not disputed. What Puntney complained of in his proposed affirmative defense was that after he turned over all his records to the lawyers selected by Bituminous and after Bituminous made a decision to contest coverage, the lawyers lost the documents. According to Puntney, the documents were necessary and essential to the defense of the action brought against him by the Fulkersons. He therefore argued that Bituminous should now be estopped from denying coverage because at the same time Bituminous decided to contest coverage, it had made it impossible for him to adequately contest his liability.

The circuit court evidently found Puntney's arguments unpersuasive, and in an order entered on July 3, 1989, it denied his motion for leave to raise his affirmative defense. Two days later, Bituminous filed its motion for summary judgment on its action for declaratory judg-

ment. Following a hearing, the circuit court entered an order on October 31, 1989, in which it granted summary judgment in favor of Bituminous and against Puntney and the Fulkersons. In reaching this judgment, the circuit court expressly found that the insurance policy issued to Puntney by Bituminous excluded from coverage the type of damage for which Puntney had been sued by the Fulkersons in the underlying action. From this judgment, both the Fulkersons and Puntney now appeal.

■ There is no dispute that the circuit court's judgment had the effect of holding that Bituminous had no duty, as a matter of law, to either indemnify Puntney or to provide him with a defense. Insofar as the circuit court's judgment declared that Bituminous had no duty to indemnify Puntney, that judgment cannot stand. The duty to indemnify arises only when an insured becomes legally obligated to pay damages in the underlying action. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 52, 514 N.E.2d 150, 163.) Accordingly, it has been held that " '[a] declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not ripe before adjudication.' " *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1989), 193 Ill. App. 3d 1087, 1101, 550 N.E.2d 1032, 1041, *appeal allowed* (1990), 132 Ill. 2d 555, 555 N.E.2d 386, quoting *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 156, 466 N.E.2d 1091, 1095-96.

Although our supreme court has carved out an exception to this rule for declaratory judgment actions brought to determine insurance coverage where the issues involved in the declaratory judgment action are separable from those in the underlying action (see *Murphy v. Urso* (1981), 88 Ill. 2d 444, 455-57, 430 N.E.2d 1079, 1084-85), this is not such a case, as will be discussed more fully below. Because there has been no adjudication of liability on the underlying action here, we must therefore conclude that the circuit court's judgment must be reversed to the extent that it absolved Bituminous from any obligation to indemnify Puntney under Puntney's insurance policy.

We likewise believe that the circuit court's judgment must be reversed insofar as it held that Bituminous has no duty to defend Puntney in the action brought against him by the Fulkersons. The record before us shows that in addressing the question of whether Bituminous was entitled to summary judgment on its claim that it had no duty to defend Puntney, the parties relied heavily on deposition testimony and affidavits. There can be no serious dispute that it was these

evidentiary matters, and not the allegations in the Fulkersons' complaint itself, which served as the predicate for the circuit court's judgment. As a general rule, consideration of such matters is entirely appropriate on a motion for summary judgment. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) Such is not the case, however, where, as here, summary judgment is sought in the context of a declaratory judgment action to determine whether an insurer has a duty to defend.

▄▄ Where a declaratory judgment action is brought to determine an insurer's duty to defend, the rule in this State is that the court must look only to the complaint in the underlying action to see if the allegations set forth therein show that the insured's conduct is within or potentially within coverage. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 52, 514 N.E.2d 150, 163; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193, 355 N.E.2d 24, 28.) In other words, it is only the allegations in the underlying complaint, considered in the context of the relevant policy provisions, which should determine whether an insurer owes a duty to defend an action brought against an insured. *Scudder v. Hanover Insurance Co.* (1990), 201 Ill. App. 3d 921, 925, 559 N.E.2d 559, 561; *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1989), 193 Ill. App. 3d 1087, 1092, 550 N.E.2d 1032, 1035, *appeal allowed* (1990), 132 Ill. 2d 555, 555 N.E.2d 386.

If the conduct alleged in the underlying action is within or potentially within the policy's coverage, the insurer is duty bound to defend its insured (*West American Insurance Co. v. Vago* (1990), 197 Ill. App. 3d 131, 136, 553 N.E.2d 1181, 1184) even if the insurer discovers that the allegations are groundless, false, or fraudulent (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335, 339). A court may look beyond the allegations in the complaint only if the coverage issue involves such ancillary matters as whether the insured paid the premiums or whether he is the proper insured under the policy. *State Farm Fire & Casualty Co. v. Shelton* (1988), 176 Ill. App. 3d 858, 867, 531 N.E.2d 913, 919.

▄▄ These principles are derived from the rule that when a court is asked to declare whether an insured's conduct is covered under a policy in the context of a declaratory judgment action, the court must not determine disputed factual issues that are crucial to the insured's liability in the underlying lawsuit. (176 Ill. App. 3d at 863, 531 N.E.2d at 919.) A declaratory judgment action should not, after all, be used to force the parties to an injury action to have a "dress rehearsal" of an important issue expected to be tried in the injury action. (176 Ill. App.

3d at 865, 531 N.E.2d at 918.) That, however, is precisely what happened here.

Although the parties proceeded by way of depositions and affidavits instead of live testimony, the hearing on the summary judgment motion was essentially an abbreviated version of what is likely to occur when a trial is held on the merits of the liability issue in the underlying action. As framed by the parties, a central question in the declaratory judgment action was how much responsibility Puntney had for the events culminating in the closure of the Tom Ramsey No. 1 well. Puntney's principal defense was that he was not responsible at all because the packer got stuck in the well casing because of where it was placed (namely, beneath some perforations in the casing), and the decision as to where the packer would be placed was made entirely by Leland Fulkerson, who owned the packer and directed all aspects of the work at the well. Bituminous, on the other hand, argued, *inter alia*, that Puntney was solely responsible for all the work involved in setting the packer; that he used his own equipment personnel to do the job; that he had complete authority over the well when he set the packer therein, including responsibility for how and where the packer was placed; and that Fulkerson was merely an observer who "did not tell or attempt to tell Puntney how to operate his equipment or set the packer."

■ These issues were clearly central to the charges brought by the Fulkersons in the underlying litigation. They were in no sense merely "ancillary matters." We must therefore conclude that the circuit court erred in looking beyond the face of the complaint in reaching its decision in the declaratory judgment action. In reaching this conclusion, we recognize that neither the Fulkersons nor Puntney, the appellants in this case, raised this point of error. Normally the matter would therefore be regarded as waived, for, as we have recognized, a reviewing court should extend its inquiry beyond the scope of arguments presented by counsel only with great circumspection. Nevertheless, Supreme Court Rule 366 (107 Ill. 2d R. 366) permits a reviewing court, in the exercise of its responsibility for a just result and for the maintenance of the sound and uniform body of precedent, to ignore considerations of waiver and decide a case on grounds not properly raised or not raised at all by the parties. (*Sumner Realty Co. v. Willcott* (1986), 148 Ill. App. 3d 497, 500, 499 N.E.2d 554, 556.) We believe that such a course is proper here.

■ If one looks only at the allegations contained in the Fulkersons' complaint in the underlying action, it is evident that the circuit court's entry of summary judgment on the declaratory judgment action cannot stand. As we have indicated, the general rule in this State is that if a complaint alleges facts potentially within the coverage of the policy, the

duty to defend has been established. The duty to defend exists even if the complaint alleges several causes of action and only one is within potential policy coverage. *West American Insurance Co. v. Vago* (1990), 197 Ill. App. 3d 131, 136, 553 N.E.2d 1181, 1184.

The threshold that a complaint must meet to present a claim for potential coverage is low. The allegations of the complaint must be construed liberally, and any doubt as to coverage must be resolved in favor of the insured. (*Scudder v. Hanover Insurance Co.* (1990), 201 Ill. App. 3d 921, 925, 559 N.E.2d 559, 561; *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1989), 193 Ill. App. 3d 1087, 1092, 550 N.E.2d 1032, 1035, *appeal allowed* (1990), 132 Ill. 2d 555, 555 N.E.2d 386.) Moreover, where, as here, an insurer seeks to avoid coverage based on an exclusionary provision in the policy, the applicability of the exclusionary clause must be clear and free from doubt. 193 Ill. App. 3d at 1098, 550 N.E.2d at 1039.

■ As we have discussed, the exclusionary provision which Bituminous invokes here as the basis for its claim that it has no duty to defend Puntney provides that Puntney's insurance coverage does not apply to damage to property "in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." Under Illinois law, property is deemed to be in the care, custody or control of the insured when it is in the possessory control of the insured at the time of the loss and is a necessary element of the work performed. *Country Mutual Insurance Co. v. Waldman Mercantile Co.* (1981), 103 Ill. App. 3d 39, 42, 430 N.E.2d 606, 609.

■ In their complaint against Puntney, the Fulkersons asked for recovery of $173,761.89 which they expended on the Tom Ramsey No. 1 from the commencement of operations there to the time the well was abandoned; $24,791.58 which they expended in attempting to retrieve the packer and repair the well; $118,687.82 which they expended in drilling a replacement well, known as the Tom Ramsey A1, on the oil lease; and unspecified amounts for the loss of oil production they allegedly sustained as a result of having to drill the replacement well. From these allegations it is evident that the property which the Fulkersons claimed to have been damaged was not limited to the packer inserted by Puntney, but included the original oil well itself.

Puntney argues that this oil well constituted real or immovable property and that, as a matter of law, such property is never subject to "care, custody or control" exclusions such as the one in Puntney's insurance policy with Bituminous. In our view, however, adoption of such a sweeping principle is not necessary to disposition of this appeal. Even if real or immovable property were capable of being placed under the pos-

sessory control necessary to trigger the "care, custody or control" exclusion, the allegations in the Fulkersons' complaint were insufficient to show that Puntney had such possessory control here.

The complaint gives no indication that Puntney did anything other than set the packer in the well, which was the task he was hired to perform. He is not claimed to have operated on the mineral formation or even upon the walls of the well. To carry out his task, Puntney was doubtless required to physically manipulate the packer in the well bore. We do not believe, however, that the mere performance of work within a well bore is sufficient, standing alone, to establish as a matter of law that Puntney had "care, custody or control" of the well itself (see *Petrol Industries, Inc. v. Gearhart-Owen Industries, Inc.* (La. App. 1982), 424 So. 2d 1059, 1064; *Meadows & Walker Drilling Co. v. Pacific Employers Indemnity Co.* (S.D. Tex. 1971), 324 F. Supp. 282, 284-85; *Goswick v. Employers' Casualty Co.* (Tex. 1969), 440 S.W.2d 287, 290), and the Fulkersons' complaint contains no further factual allegations from which one could reasonably infer that the process of setting the packer necessitated that Puntney assert any sort of care, custody or control over that well.

The complaint did allege that it was Puntney's negligence in setting the packer which rendered the well unusable. Nevertheless, Puntney's insurance policy with Bituminous did not exclude damage caused *by* property in the insured's control. It only excluded damage *to* such property. Thus, the fact that the packer may have been in Puntney's control at the time the well was damaged does not mean that damage to the well itself is excluded from coverage. (See *Goswick v. Employers' Casualty Co.* (Tex. 1969), 440 S.W.2d 287, 290.) Accordingly, it cannot be said as a matter of law that the damage to the oil well was not within the potential coverage of Puntney's insurance policy with Bituminous. The circuit court therefore erred in granting summary judgment in favor of Bituminous and should not have relieved it of its duty to defend Puntney in the underlying action.

Even if it had been proper for the circuit court to look beyond the face of the Fulkersons' complaint and to consider the depositions and affidavits submitted by the parties in connection with Bituminous' summary judgment motion, the circuit court's judgment could not be sustained. Those evidentiary materials confirmed that Puntney had exclusive physical control over the packer when it was being placed in the well, but they did not show conclusively that Puntney had "care, custody or control" of the well itself. To the contrary, a substantial amount of evidence was adduced through the depositions and affidavits which indicated that, at all times, the care, custody and control of the well itself remained with the

Fulkersons. Affidavits submitted on behalf of Puntney and by the Fulkersons themselves specifically confirmed this. Eric Williams, who assisted Puntney in setting the packer, swore in his affidavit that at all relevant times he and Puntney were "under the direct supervision of Leland Fulkerson who made all decisions and personally directed all decisions and aspects of [their] work at the Tom Ramsey No. 1 site," and the Fulkersons swore in their affidavit that Puntney placed the packer in the hole for the well at their instruction and that at all times the well bore, casing and formation remained under their control. Under these circumstances, the circuit court erred in summarily concluding as a matter of law that the Fulkersons' claim for damage allegedly caused to the well by Puntney was excluded from coverage under Puntney's insurance policy with Bituminous.

Just as we believe that the circuit court erred in granting summary judgment in favor of Bituminous, we also believe that it abused its discretion in denying Puntney leave to assert his proposed affirmative defense. The grounds for Puntney's affirmative defense were straightforward. As indicated at the outset of this opinion, Puntney asserted that after he was sued by the Fulkersons for damage to the well, Bituminous retained a law firm to defend him in that case. Puntney collected all of the documents he had which were pertinent to the litigation and surrendered them to the law firm, which he claims he was contractually obligated to do under the terms of his insurance policy. After Bituminous initiated its declaratory judgment action, however, Puntney allegedly discovered that the law firm had lost all of those documents. According to Puntney, those documents were necessary and essential to his defense of the litigation brought against him by the Fulkersons. Accordingly, he asserted that their loss would leave him without any adequate remedy at law and that Bituminous should therefore be estopped from denying insurance coverage for any liability arising out of the action brought against him by the Fulkersons.

Although Puntney did not seek to assert this affirmative defense until approximately a year and a half after Bituminous filed its declaratory judgment action, he claimed that he did not learn and could not reasonably have learned that the documents were missing until that time. On this appeal, Bituminous does not suggest, and it apparently has never suggested, that Puntney was in any way dilatory in raising his estoppel defense. Nor does Bituminous contend that it would have been prejudiced had Puntney been permitted to assert his proposed affirmative defense in the manner and at the time attempted here. Rather, the gravamen of Bituminous' objection is simply that the proposed affirmative defense is insufficient as a matter of law because it did not adequately

allege facts which, if true, would constitute estoppel. We cannot accept this analysis.

■ As a preliminary matter, Bituminous has not cited, and we have not found, any authority suggesting that defects in the way a proposed affirmative defense is pleaded constitute a sufficient basis for denying leave to amend a pleading to raise that defense. Section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—616), which governs amendments to pleadings, states simply that such amendments, including the addition of new defenses, may be allowed at any time before final judgment "on just and reasonable terms." Whether an amendment is permitted under this provision lies within the sound discretion of the trial court, but the factors which a trial court should consider in exercising this discretion are whether the proposed amendment would cure a defective pleading, whether the amendment could cause prejudice or surprise to an adverse party, the timeliness of the proposed amendment, and whether previous opportunities to amend the pleadings can be identified. (*Schwaner v. Belvidere Medical Building Partnership* (1987), 155 Ill. App. 3d 976, 988, 508 N.E.2d 522, 530.) The first of these factors clearly does not apply where, as here, a party seeks to assert an affirmative defense for the first time, and the remaining factors are not addressed in any way to the sufficiency of the allegations in the proposed amendment.

■ The Code of Civil Procedure does provide a mechanism for challenging a pleading which is claimed to be substantially insufficient in law, but that is not through objection to a motion for leave to amend under section 2—616 (Ill. Rev. Stat. 1987, ch. 110, par. 2—616). It is through a motion with respect to pleadings filed under section 2—615 (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). Motions brought pursuant to section 2—615 must meet specific requirements. They must specify the particular defects complained of and the relief sought by the moving party. The purpose of requiring that defects be specifically identified is to afford the nonmoving party an opportunity to cure those defects by amendment (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 422, 430 N.E.2d 976, 983), and such amendments are expressly authorized by subsection (d) of the rule (Ill. Rev. Stat. 1987, ch. 110, par. 2—615(d)).

■ None of these things is provided for in the context of a simple motion for leave to amend to raise a new affirmative defense under section 2—616 (Ill. Rev. Stat. 1987, ch. 110, par. 2—616). For this reason, we do not believe that parties should be allowed to use objections to motions filed under section 2—616 as a substitute for a motion with respect to pleadings under section 2—615. That, however, is apparently exactly what happened here. From the record before us, there is no indication that Bi-

tuminous proffered anything which could remotely be regarded as a section 2—615 motion. Because of this, and because no claim has been made that the proper elements necessary to justify leave to amend were not satisfied here, we must conclude that the circuit court erred in denying such leave to Puntney.

Even if the sufficiency of the allegations in Puntney's proposed new affirmative defense were a proper matter to be taken up by the circuit court, Bituminous' objections to the affirmative defense would still be unavailing. Bituminous contends that there is no allegation that it was directly responsible for the loss of Puntney's documents. The affirmative defense specifically avers, however, that the lawyers who lost the documents had been retained by Bituminous to handle Puntney's case and that Puntney was contractually obligated under his insurance policy with Bituminous to surrender the documents to them. Under these circumstances, we believe that the acts and omissions of the attorneys are certainly imputable to Bituminous itself.

Bituminous also argues that the allegations in the defense are insufficient because they do not show any misconduct by it or knowledge of the misconduct by the attorneys it retained. What Bituminous fails to comprehend is that misconduct is not necessary to establish estoppel. For insurance purposes, estoppel refers to an abatement, raised by law, of rights and privileges of an insurer where it would be inequitable to permit their assertion. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879.) Unlike waiver, estoppel does not focus on the conduct or intent of the insurer, but on the effect of the insurer's conduct on the insured. *National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 205, 456 N.E.2d 206, 214.

Estoppel, of course, necessarily requires prejudicial reliance on the part of the insured. (*Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d at 500, 475 N.E.2d at 879.) Although Bituminous did protest that there were no "allegations of ultimate facts to show any prejudice which might have resulted to Puntney from the claimed conduct," *i.e.*, the loss of the documents, this contention is completely untenable. According to Puntney's pleading, he turned over to the attorneys all of the documents in his possession which were relevant to the claim brought against him by the Fulkersons. As we have indicated, Puntney further alleged that those documents were essential to his defense. That the loss of such documents is prejudicial seems self-evident.

To be sure, greater specificity in detailing how exactly Puntney's defense would be compromised without the lost documents might have been preferred. Under the circumstances, however, we fail to see how

any greater specificity could reasonably be required. For Puntney to have provided additional details would have necessitated that he refer to the particulars of the specific documents at issue, but those documents were no longer available for his review, and by the time he discovered they were lost, he had not even seen them for over a year and a half. This was through no fault of his own. According to Puntney's allegations, it was entirely the product of circumstances created by, or attributable to, Bituminous. It was Bituminous which required Puntney, by contract, to surrender the relevant documents, and it was attorneys selected by Bituminous who were to blame for their loss. Thus, it is Bituminous itself which must be held accountable for Puntney's inability to more fully set forth his defense. It will not now be heard to complain of a situation of its own making.

For the foregoing reasons, the order of the circuit court of White County granting summary judgment in favor of Bituminous on its declaratory judgment action is reversed, and the cause is remanded for further proceedings. On remand, the circuit court is directed to permit Puntney to amend the pleadings to add his first affirmative defense.

Reversed and remanded with directions.

HOWERTON, J., concurs.

JUSTICE CHAPMAN, concurring in part and dissenting in part:

I concur in the result reached by the majority, but must dissent as to the paragraph beginning, "Even if the sufficiency of the allegations ***," and ending, "Under these circumstances, we believe that the alleged acts and omissions of the attorneys are certainly imputable to Bituminous itself." (212 Ill. App. 3d at 568.) I dissent from that portion of the opinion for two reasons: first, it is unnecessary to reach that issue since the preceding paragraphs clearly state the appropriate basis for reversal, and second, at this stage of the proceedings I do not feel that it is clear "that the acts and omissions of the attorneys are certainly imputable to Bituminous itself." 212 Ill. App. 3d at 568.