ILLINOIS STATE MEDICAL INSURANCE SERVICES, INC., as Attorney-in-Fact for Illinois State Medical Inter-Insurance Exchange, Plaintiff-Appellee and Cross-Appellant, v. JOSEPH J. CICHON *et al.*, Defendants-Appellants and Cross-Appellees.

Third District    No. 3—93—0399

Opinion filed February 18, 1994.

Law Offices of Peter F. Ferracuti, P.C., of Ottawa (James R. Lindig, of counsel), for appellants.

Neil E. Holmen, of Winston & Strawn, of Chicago (Michael P. Reynolds, of counsel), for appellee.

JUSTICE LYTTON delivered the opinion of the court:

This appeal arises out of a dispute concerning professional

liability insurance coverage under a policy issued by Illinois State Medical Insurance Services, Inc. (insurer), to Dr. Joseph J. Cichon, D.O. After 13 actions alleging medical negligence were filed against Dr. Cichon in La Salle County, the insurer brought a declaratory judgment action to determine whether it is obligated under the policy to defend and indemnify Dr. Cichon for any liability he may incur in those actions. The trial court entered summary judgment in favor of the insurer as to nine of the original plaintiffs (claimants), holding that two policy exclusions relieve the insurer of liability, and those claimants appeal from that judgment. The insurer cross-appeals from the trial court's denial of summary judgment as to three additional defenses to coverage. We reverse in part and affirm in part.

## FACTUAL BACKGROUND

The underlying causes of action reveal a variety of circumstances giving rise to the claims of medical malpractice.

(1) G.H., a minor, alleges that she was erroneously diagnosed by Dr. Cichon as suffering from a curvature of the spine, that during 1987 and 1988 he used a thermographic camera for purposes of diagnosis and that he rubbed lotion and salves on her back, buttocks and chest when such treatment was not necessary.

(2) S.T., a minor, also alleges an erroneous diagnosis of curvature of the spine and the taking of photographs and the rubbing of lotions and salves on her back and chest during 1989.

(3) A.J., a minor, similarly alleges a misdiagnosis of curvature of the spine, and additionally alleges that during 1987 through 1989, Dr. Cichon performed a rectal examination without use of gloves or lubricants, purportedly to determine whether she had a yeast infection although such an exam was not a medically necessary technique.

(4) J.F., a minor, alleges that she was erroneously diagnosed as suffering from an abnormal condition causing her to grow prematurely to a state of physical womanhood, that during 1989 and 1990 he manipulated her breasts, buttocks and pelvic area, that he spanked her, and that he instructed her mother to perform various manipulations of her breasts, all for no proper medical purpose.

(5) C.B., a minor, alleges that she sought treatment for stomach pains, that Dr. Cichon failed to conduct a proper examination, and that during 1990 he performed various manipulations and digital penetrations without use of gloves or lubricants for no proper medical purpose.

(6) Angela Gillis, a developmentally disabled adult, alleges that she was misdiagnosed as suffering from appendicitis, that during 1990 he performed a rectal examination and manipulation of her

vaginal and rectal areas without gloves, all of which had no proper medical purpose.

(7) S.K., a minor, alleges that she was misdiagnosed as having a skin disease, that during June and July of 1989 his treatment included applying salves and lotions to her breasts, vagina and buttocks and using ultraviolet light therapy, and that he performed various invasive manipulations, all with no proper medical purpose.

(8) C.K., a minor, alleges that she was misdiagnosed as having a freckling or sunblock condition, that during 1990 he treated her by means of invasive manipulations and application of salves and lotions to her buttocks and vaginal area, and that he took photographs and videotapes of the purported treatment, all with no proper medical purpose.

(9) Leonda Kilpatrick alleges that she consulted Dr. Cichon for back pain, that she was misdiagnosed as having a misalignment of pelvic muscles, that between April of 1989 and June of 1990 he inserted suppositories without gloves or lubricants, that he applied salves and lotions to her vaginal area and buttocks, that he inserted his hand in her vaginal area, and that he administered morphine, none of which was necessary for the treatment of any condition of ill-being.

The insurer's complaint for declaratory judgment sought an adjudication of its duty to defend and indemnify Dr. Cichon with regards to the medical negligence actions under the professional liability policy issued to him.

The insurer sought to deny coverage on five grounds: (1) the policy does not apply to liability arising out of any conduct of a sexual nature; (2) the insured failed to notify the insurer of his drug addiction; (3) as to seven of the claims, the insured did not give insurer notice of the claims within the policy period; (4) the claimants have only alleged psychological injuries, not bodily injuries; and (5) acts or omissions which are a violation of a criminal statute are not covered.

After the claimants filed their answers to the complaint, the insurer filed a motion for summary judgment on all counts. Claimants responded and filed a cross-motion for summary judgment. The trial court ruled that the insurer had no duty to indemnify Dr. Cichon for any liability arising out of these claims because the policy excludes liability for conduct of a sexual nature and also because he failed to notify the insurer of his substance abuse problem. The court denied the claimants' cross-motion for summary judgment.

## 1. DECISION NOT PREMATURE

The claimants first contend that the trial court's determination that the insurer has no duty to indemnify its insured should not have

been made until his medical malpractice liability has been determined. They rely upon the rule set forth in *Bituminous Casualty Corp. v. Fulkerson* (1991), 212 Ill. App. 3d 556, 561, 571 N.E.2d 256, 260, as follows:

> "The duty to indemnify arises only when an insured becomes legally obligated to pay damages in the underlying action. [Citation.] Accordingly, it has been held that ' "[a] declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not ripe before adjudication." ' [Citations.]"

(Accord, *Weber v. St. Paul Fire & Marine Insurance Co.* (1993), 251 Ill. App. 3d 371, 622 N.E.2d 66.) Thus, it would appear that insurer here is premature in seeking a declaratory judgment as to its duty to indemnify prior to a determination of liability in the underlying actions.

■ However, insurer argues, and we agree, that this case comes within an exception to the general rule which was recognized in *Murphy v. Urso* (1981), 88 Ill. 2d 444, 455, 430 N.E.2d 1079, 1084. There the court held that the question of coverage can appropriately be decided in a declaratory judgment action where the issues in the underlying suit are separable from those in the collateral proceeding. According to *Murphy*, the test is whether collateral estoppel would operate. If the issues are substantially the same so that collateral estoppel would apply to control the resolution of issues in the underlying suit, declaratory judgment would be premature. Such is not the case here.

The issues in this declaratory judgment action are whether: (1) the medical malpractice complaints allege sexual conduct within the meaning of the policy exclusion; (2) Dr. Cichon failed to notify the insurer of his drug addiction as required by the policy; (3) seven of the claims were first made within the policy period; (4) the claimants' psychological injuries alleged in the complaints come within the policy coverage for personal injuries; and (5) Dr. Cichon's alleged conduct amounted to acts or omissions in violation of criminal statutes.

Quite different issues are presented in the medical malpractice actions. In order to recover on their complaints, each claimant must prove that Dr. Cichon engaged in the conduct alleged, that his diagnosis and treatment deviated from the standard of care in the medical community, and that the claimant's injuries were proximately caused by the alleged conduct. Thus, the factual determinations made in the declaratory judgment action would not control the outcome of the

underlying law suits. We conclude that this declaratory judgment action to determine coverage is not premature.

## 2. CONDUCT OF A SEXUAL NATURE

Article II, paragraph 24, of the policy expressly provides that it does not apply to liability of an insured "arising out of any conduct of a sexual nature whether or not such conduct arises out of the rendering or failure to render of professional services." This exclusion also provides that the insurer is obliged to defend a suit which would be covered under the policy except for the exclusion. By entering summary judgment in favor of the insurer as to this issue, the trial court ruled that the allegations of negligent conduct in the underlying complaints amounted to sexual conduct as a matter of law and, therefore, are excluded from coverage. Thus, the insurer would have no obligation to indemnify its insured although the duty to defend him would not be affected.

Claimants contend that the trial court erred in entering summary judgment on this issue because the conduct described in their complaints is not sexual conduct *per se* and that the term "sexual conduct" is not defined in the policy and is ambiguous. They rely upon the generally accepted rules governing interpretation of insurance policies. When an insurer attempts to limit liability, it must show that the claim falls within the exclusion, and exclusionary provisions are applied only where the terms are clear, definite and explicit. (*State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 255-56, 430 N.E.2d 641, 646.) Provisions which seek to limit the insurer's liability are construed most strongly against the insurer and in favor of the insured. (*Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 179, 370 N.E.2d 1044, 1049.) The allegations of the underlying complaint must be construed liberally, and any doubt as to coverage must be resolved in favor of the insured. *Bituminous Casualty Corp. v. Fulkerson* (1991), 212 Ill. App. 3d 556, 562, 571 N.E.2d 256, 262.

The insurer argues that the term "sexual conduct" used in the policy should have the same definition as it has in section 12—12(e) of the Criminal Code of 1961 (720 ILCS 5/12—12(e) (West 1992)): "[A]ny intentional or knowing touching or fondling *** either directly or through clothing, of the sex organs, anus or breast *** for the purpose of sexual gratification or arousal ***." Absent any indication that parties intended the criminal definition to apply, we do not interpret the policy provision to be identical to the criminal definition, which is only one of several possible meanings of the term "sexual conduct."

None of the complaints expressly allege that Dr. Cichon engaged in sexual conduct. The specific allegations concern unnecessary rectal exams, rubbing and application of creams and lotions to breasts and rectal and vaginal areas, manipulations, including "invasive manipulations," and "digital penetration." Routine physical examinations of female patients often involve such actions by a physician and are not sexual conduct as a matter of law.

To carry the ruling of the trial court to its logical conclusion would be to say that any physical examination of the breasts and genital areas of a female patient by a physician would come within the sexual conduct exclusion. Such a result would be absurd. This logical fallacy has been described by Judge Aldisert as "Fallacy of Accident" as follows:

> "Jevons gives this classic example: 'He who thrusts a knife into another person should be punished; a surgeon in operating does so; therefore he should be punished.' (W. Jevons, *Elementary Lessons in Logic: Deductive and Inductive* 177 (1870).) The maxim 'the exception proves the rule' is relevant here." R. Aldisert, Logic for Lawyers: A Guide to Clear Legal Thinking 190-91 (1992).

■ The determination of whether the conduct of Dr. Cichon constituted sexual conduct within the meaning of the policy must be regarded as a question of fact in each case with two exceptions.

As to two claimants, additional evidence compels us to reach a different result. Prior to the filing of the medical negligence complaints, Dr. Cichon was charged with 54 counts of criminal violations ranging from aggravated sexual assault to child pornography. Pursuant to a plea agreement, he entered guilty pleas as to 12 charges involving three different claimants, two of whom are involved in this appeal. As to C.K. Kilpatrick, he entered guilty pleas to two charges of aggravated criminal sexual assault, one involving a finger inserted into her vagina and the other a finger inserted into her anus. He also pleaded guilty to three counts of child pornography involving videotaping of lewd fondling and lewd exhibition of genitals. As to S.K., he entered guilty pleas to one charge of aggravated sexual assault (finger inserted in anus) and two counts of child pornography involving videotaping of lewd fondling.

Since Dr. Cichon admitted to criminal sexual conduct with these two claimants, no question of fact remains as to them. The conduct alleged in their complaints was sexual by his own admission, and summary judgment was appropriate as to their claims. However, as to the other seven claimants, summary judgment should not have been entered because questions of fact remain to be determined. The alleged conduct differed from case to case, and the dates varied over

a period of several years. Thus, Dr. Cichon's admission of sexual conduct in two cases is not controlling as to the other seven. As to all the claimants except C.K. and S.K., we reverse the summary judgment entered on the ground of the sexual conduct exclusion.

### 3. SUBSTANCE ABUSE

The insurance policy in question also provides that it does not apply "to liability of any insured arising out of the rendering of or failure to render professional services when the named insured has incurred or become aware of an illness or physical or mental disability (including substance abuse) which impairs or potentially could impair the named insured's ability to practice medicine if the named insured has not notified the [insurer] in writing describing the circumstances of such illness or disability."

Attached to the complaint for declaratory judgment were excerpts from testimony by Dr. Cichon at a hearing on a motion to suppress certain evidence in the criminal proceedings against him. Dr. Cichon testified that he had used medication for sleep since 1983 or 1984, that he began to take anti-depressants in 1985 and small doses of oral narcotics between 1985 and 1986. In mid-1987 he commenced injecting narcotics and continued until a suicide attempt in July of 1990. After that he was hospitalized and treated for drug abuse. He also testified that he had used marijuana since 1970 and that he first became aware of his substance abuse problem when he told his brother in January or February of 1990. In the same proceeding a psychiatrist who had examined Dr. Cichon in May of 1991 testified as an expert witness that he was suffering from substance abuse, obsessive-compulsive personality, paraphilia, and depression.

At no time did Dr. Cichon notify his insurer that he suffered from substance abuse or any other physical or mental disability.

Claimants argue that the trial court erred in entering summary judgment in favor of insurer on the ground that Dr. Cichon had failed to provide written notice of his condition in the absence of any showing that his ability to practice medicine was actually impaired. An insurance policy that excludes coverage regardless of actual impairment is argued to be contrary to public policy.

The insurer insists that the policy is to be construed literally so as to exclude coverage in the event any illness or disability is incurred which potentially could impair the ability to practice medicine, regardless of the insured's awareness of the condition. Such an interpretation would allow an insurer to avoid liability that arose prior to the diagnosis of an insured's illness. For example, if an insured is discovered to have been suffering from heart disease, cancer, or other

potentially disabling illness, the insurer can refuse to provide coverage for the insured's practice of medicine prior to diagnosis on the ground that notice was not provided at the onset of the illness. We decline to accept such an unreasonable construction.

■ The insured cannot be required to provide notice until such time as he has actual knowledge of his illness or disability. Hence, we must construe this policy provision to exclude coverage only as to those claims arising after Dr. Cichon knew he had a substance abuse problem. Claimants G.H., S.T., A.J., and S.K. were treated by Dr. Cichon prior to January of 1990, and J.F. and Leonda Kilpatrick were treated both before and after January and February of 1990. As to all of them, we reverse the judgment of the trial court. At trial on the underlying issues, a determination can be made of the date in January or February when Dr. Cichon knew he had a substance abuse problem. All claims arising from treatment occurring before that date are covered by the policy; all others are excluded. As to C.K., Angelea Gillis, and C.B., the judgment in favor of the insurer is affirmed.

## · 4. LATE NOTICE OF SUIT

On cross-appeal the insurer contends that coverage should be denied as to seven of the claimants because the insured did not give timely notice of the complaints filed on March 11, 1991. Notice of those suits was first sent to the insurer on August 2, 1991, which was after the July 1, 1991, expiration of Dr. Cichon's insurance policy. The policy provided:

> "CLAIM FIRST MADE—This insurance applies only to any claim or claims covered hereunder and first made against the insured during the policy period. If during the policy period, the insured shall have knowledge of or become aware of any claim or suit arising out of the rendering of or failure to render professional services on or after the retroactive date, then the insured shall give written notice thereof to the [insurer] as provided ***. At the time received by the [insurer], such written notice shall be considered a claim first made hereunder against all insureds."

According to the pleadings in the record, Dr. Cichon selected attorney Carl Telford to represent him with the approval of the insurer, which had agreed to defend the claims subject to a reservation of rights. Copies of the medical negligence complaints were received by Telford, and he filed his appearance on behalf of Dr. Cichon in the seven suits at issue on April 22, 1991, a date well within the policy period.

■ The insurer seeks to avoid liability on the technical ground that written notice from the insured was not received prior to July 1,

1991; however, the insurer appears to have been providing a legal defense for the insured since April 22, 1991. We conclude a question of fact exists as to whether Telford was acting as the agent of the insurer in these matters and whether notice to Telford satisfied the notice requirement of the policy. We affirm the trial court's denial of summary judgment on the issue of notice during the policy period.

## 5. PSYCHOLOGICAL INJURIES

In their medical negligence complaints, these nine claimants alleged that each suffered "permanent injuries to her mental state of well-being, causing the [claimant] to incur past and ongoing medical expenses for treatment of the psychological effects of [Dr. Cichon's] actions and suffers from permanent pain and disability."

The insurance policy provides coverage for personal injury arising out of the rendering or failure to render professional services. The phrase "personal injury" is defined as "only bodily injury to, libel of, slander of, defamation of character of or invasion of privacy of any patient when such offenses arise out of the rendering of or failure to render professional services." Insurer argues that the psychological injuries alleged by the claimants do not come within the personal injury coverage of Dr. Cichon's policy and, hence, that the trial court erred in refusing to grant summary judgment on this issue.

■ The complaints indicate that in each case Dr. Cichon is alleged to have rubbed, manipulated, penetrated, and probed the breasts, buttocks, rectal areas, and vaginal areas of claimants. Given the physical nature of this alleged malpractice, the trial court could not rule, as a matter of law, that no bodily injury or invasion of privacy occurred within the meaning of the policy. In *Carey v. Piphus* (1978), 435 U.S. 247, 263-64, 55 L. Ed. 2d 252, 265, 98 S. Ct. 1042, 1052, the United States Supreme Court observed that mental and emotional distress constitute personal injury. The court said:

> "Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff."

In a New Jersey case similar to the one before us, where an insurance policy provision required indemnification for damages caused by the insured's tortious acts resulting in bodily injury to others, the court held that the emotional and psychological effects of repeated acts of sexual harassment by offensively touching an employee's breasts and "rear end" were covered even though the complaint alleged only "serious emotional distress and disruption of her personal life." (*NPS Corp. v. Insurance Co. of North America* (1986), 213 N.J.

Super. 547, 549, 517 A.2d 1211, 1212.) Applying the same reasoning to this case, we hold that the trial court did not err in refusing to enter summary judgment in favor of the insurer on the question of coverage for psychological injury resulting from Dr. Cichon's alleged actions.

## 6. CRIMINAL VIOLATIONS

The insurance policy also excluded from coverage "liability of any insured for damages resulting from an act or omission which is also a violation of a statute, ordinance or regulation imposing criminal penalties." Since Dr. Cichon's conduct with six of the nine claimants gave rise to criminal indictments for sexual crimes, the insurer contends that all of the negligent acts alleged in the claimants' complaints are excluded under the policy as criminal statutory violations.

■ The rule that any doubt as to coverage must be resolved in favor of the insured (*Bituminous Casualty Co.*, 212 Ill. App. 3d 556, 571 N.E.2d 256) must be applied here to each separate medical negligence action. Thus, insurer's attempt to exclude from coverage the suits of all nine claimants must fail, and we must examine each complaint separately. As to the complaints filed on behalf of C.K. and S.K., these allegations are conclusively excluded from coverage because Dr. Cichon entered pleas of guilty to criminal charges based on the conduct alleged in their complaints. However, as to the remaining claimants, the insurer must establish that the allegedly negligent conduct was in fact criminal in each case. Obviously, each of these cases presents questions of fact, and, thus, summary judgment is not appropriate.

We hold that the trial court correctly refused to enter summary judgment for the criminal violation policy exclusion in the cases of J.F., A.J., G.H., S.T., C.B., Angelea Gillis and L.K. However, as to C.K. and S.K., summary judgment should have been entered in favor of the insurer, and as to those two claimants, we reverse the trial court's denial of summary judgment.

## CONCLUSION

As we have indicated, we reverse summary judgment entered as to the policy exclusion for sexual conduct except as to C.K. and S.K. Also, we reverse the entry of summary judgment on the applicability of the policy exclusion for failure to notify the insurer of substance abuse as to the alleged medical negligence occurring before Dr. Cichon knew of his problem. As to C.K. and S.K., we reverse the denial of summary judgment and order summary judgment entered on the

applicability of the criminal violation exclusion. We affirm all other rulings of the trial court, and we remand this cause for further proceedings in accordance with this decision.

Affirmed in part; reversed in part and remanded.

BARRY and McCUSKEY, JJ., concur.