UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff-Appellee, v. WILKIN INSULATION COMPANY *et al.*, Defendants-Appellants (Commercial Union Insurance Company *et al.*, Intervening Plaintiffs-Appellees).

First District (4th Division)   No. 1—87—2684

Opinion filed December 28, 1989.—Rehearing denied February 28, 1990.

William C. Murphy, Craig S. Mielke, and Gerald K. Hodge, all of Murphy, Hupp, Foote, Mielke & Kinnally, of Aurora, for appellants.

Robert L. Kiesler and Cynthia A. Meister, both of Kiesler & Berman, of Chicago, for appellee United States Fidelity and Guaranty Company.

Williams & Montgomery, of Chicago (James K. Horstman, Barry L. Kroll, Anthony P. Katauskas, and Lloyd E. Williams, Jr., of counsel), for appellees Commercial Union Insurance Company and Employers Fire Insurance Company.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Thomas M. Hamilton, Fritz K. Huszagh, and Katherine S. Derick, of counsel), for appellees Argonaut Insurance Company and Argonaut Midwest Insurance Company.

Rivkin, Radler, Dunne & Bayh, of Chicago (Barbara B. Guibord, Steven R. Merican, and Mark R. Sargis, of counsel), for appellee Aetna Casualty & Surety Company.

Phelan, Pope & John, of Chicago (Peter C. John and Matthew J. Gehringer, of counsel), for appellee Zurich Insurance Company.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Donna Dagnall and G. Michael Taylor, Assistant Attorneys General, of Chicago, of counsel), for *amicus curiae* Attorney General of the State of Illinois.

Arthur G. Leisten and Christopher J. McElroy, both of United States Gypsum Company, and James T. Otis, Robert A. Creamer, Robert C. Gislason, Patty J. Dyer, and Jeanine M. Jiganti, all of Keck, Mahin & Cate, both of Chicago, for *amicus curiae* United States Gypsum Company.

Don E. Glickman, of Rudnick & Wolfe, of Chicago, and Wiley, Rein & Fielding, of Washington, D.C. (Thomas W. Brunner, Laura A. Foggan, and Frank Winston, Jr., of counsel), for *amicus curiae* Insurance Environmental Litigation Association.

Richard L. Sandler, of McDermott, Will & Emery, of Chicago, and Wilson M. Brown III, Stewart Dalzell, Stephen P. Chawaga, and Cynthia M. Lighty, all of Drinker, Biddle & Reath, of Philadelphia, Pennsylvania, for *amici curiae* American Motorists Insurance Company, American Manufacturers Mutual Insurance Company, and Lumbermens Mutual Casualty Company.

JUSTICE JOHNSON delivered the opinion of the court:

Defendants, Wilkin Insulation Co., Wilkin Properties, Inc., and Architectural Sales, Inc., appeal from an order of the circuit court of Cook County granting the summary judgment motions of plaintiff, United States Fidelity and Guaranty Company, and intervening plaintiffs, Commercial Union Insurance Company (hereinafter Commercial Union), Employers Fire Insurance Company (hereinafter Employers), Argonaut Insurance Company and Argonaut Midwest Insurance Company (hereinafter Argonaut), and Zurich Insurance Company (hereinafter Zurich), and denying defendants' cross–summary-judgment motion. Aetna Casualty & Surety Company (hereinafter Aetna) did not file a summary judgment motion but agreed to be bound by the trial court's decision. The trial court found that defendants were not entitled to insurance coverage under the various comprehensive general liability policies, issued by plaintiff and intervening plaintiffs, for asbestos-related complaints filed against defendants by several school districts and building owners.

The following issues are presented for review: (1) whether the trial court properly found that no potential for coverage exists since the complaints filed against defendants did not allege "property damage" as defined in the various policies; (2) whether the trial court properly found that no potential for coverage exists since the complaints filed against defendants did not allege an "occurrence" as defined in the policies; (3) whether the trial court correctly found that coverage was precluded because of various exclusionary provisions

contained within the policies.

*Amicus curiae* briefs were filed by United States Gypsum Company and the Attorney General of the State of Illinois which support defendants' position. An *amicus curiae* brief was also filed by Insurance Environmental Litigation Association, and a joint *amicus curiae* brief was filed by American Motorists Insurance Company, American Manufacturers Mutual Insurance Company, and Lumbermens Mutual Casualty Company, which supports the position of plaintiff and intervening plaintiffs.

We reverse.

Defendants are engaged, primarily, in the contract installation of thermal insulation. Various lawsuits were brought against defendants to recover damages arising from the alleged installation of asbestos-containing materials in a number of schools and other public buildings. Defendants sought defense and indemnification against these asbestos-related suits from plaintiff and intervening plaintiff insurers. Defendants note that although Wilkin Insulation Company is the only named defendant in the underlying suits brought by the various schools and building owners, Wilkin Properties, Inc., and Architectural Sales, Inc., are parties by virtue of being named insureds under the various comprehensive general liability policies.

All of the insurers, with the exception of plaintiff, agreed to defend defendants under a reservation of rights. Plaintiff, instead, brought an action against defendants for a declaratory judgment that there was no duty to defend or provide indemnity since the damages that were alleged were not covered under its policy. The other insurers then filed intervening petitions also seeking such declarations. Defendants subsequently filed a declaratory judgment action against all of their insurers seeking a declaration of the rights and obligations of the parties under the various policies. All of the parties, with the exception of Aetna, then filed cross–summary-judgment motions.

In ruling on the summary judgment motions, the trial court found that no "property damage" caused by an "occurrence," as defined in the policies, was alleged in any of the complaints filed against defendants. The court reasoned that the damages claimed were pure economic losses which fell outside of insurance coverage and, therefore, there was no duty to defend or indemnify defendants. Furthermore, the court found that even assuming, *arguendo*, that "property damage" was alleged, various exclusions in the policies would preclude coverage for the damages claimed in the underlying suits. This appeal followed.

■ Summary judgment is granted when the pleadings, affidavits

and depositions on file reveal that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. (*Western Casualty & Surety Co. v. Adams County* (1989), 179 Ill. App. 3d 752, 755-56; Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) The right to summary judgment must be clear beyond question, and an order granting summary judgment must be reversed if a reviewing court determines that questions of material fact exist or that judgment for the movant was incorrect as a matter of law. *International Amphitheater Co. v. Vanguard Underwriters Insurance Co.* (1988), 177 Ill. App. 3d 555, 571.

■ The allegations in the underlying complaint in the context of relevant policy provisions determine whether an insurer owes a duty to defend an action brought against an insured. (*United States Fidelity & Guaranty Co. v. Specialty Coatings Co.* (1989), 180 Ill. App. 3d 378, 383-84.) If the complaint alleges facts potentially within the coverage of the policy, the duty to defend has been established. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193.) "At the duty-to-defend stage *** the court [cannot] adjudicate disputed facts. That is the genesis of the rule that the court must look only to the complaint to see if the allegations show that the insured's conduct is potentially within coverage." *State Farm Fire & Casualty Co. v. Shelton* (1988), 176 Ill. App. 3d 858, 866.

■ The court in *Western Casualty & Surety Co. v. Adams County* (1989), 179 Ill. App. 3d 752, defined "potential coverage" as follows:

> " 'Potentially covered' means that the insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the possibility of a recovery under the policy. [Citation.] The complaint need not allege or use language affirmatively bringing the claims within the scope of the policy, as the question of coverage should not hinge exclusively on the draftsmanship skills or whims of the plaintiff in the underlying action. [Citation.]" (*Western Casualty*, 179 Ill. App. 3d at 756.)

The threshold that a complaint must meet to present a claim for potential coverage is low. Doubt as to coverage must be resolved in favor of the insured. *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451.

The operative language in each of the basic insuring clauses of the various policies is essentially the same in that coverage will be provided for "property damage" that has been sustained as a result of an "occurrence." The insurers argue that the underlying com-

plaints do not allege "property damage" as defined within policies. The trial court found that only economic loss was claimed since the parties in the underlying suits were asking for costs and repair and replacement. This decision was based, in part, upon another circuit court memorandum opinion, Board of Education of Chicago v. A,C & S, Inc. (Cir. Ct. Cook Co. February 26, 1986), Nos. 85—CH—00811, 85—CH—00812, 85—CH—03905 (hereinafter No. 85—CH—00811)). This cause represents a consolidation of two of the underlying suits in the instant case, Board of Education of Chicago v. A,C & S, Inc. (Cir. Ct. Cook Co.), No. 85—CH—00811, and Evanston Community Consolidated School District No. 65 v. A,C & S, Inc. (Cir. Ct. Cook Co.), No. 85—CH—00812.

One of the issues in No. 85—CH—00811 was whether plaintiffs had sufficiently pleaded a cause of action to recover costs to remove and repair the asbestos-containing materials in the school buildings so as to maintain a tort claim. The trial court found that the underlying complaints failed to allege actual property damage but only sought damages for costs of remedial measures, which constitute economic loss and are not recoverable in tort.

The appellate court, in reversing the trial court's finding of non-recoverable economic loss, found that the incorporation of the asbestos physically altered the buildings in a manner which made the structures harmful to their occupants. The court also held that the physical damage caused by the asbestos may be measured by the cost of repairing the buildings to make them safe. *Board of Education v. A,C & S, Inc.* (1988), 171 Ill. App. 3d 737, 748.

This decision was recently affirmed by the Illinois Supreme Court in *Board of Education v. A,C & S, Inc.* (1989), 131 Ill. 2d 428, holding that there were sufficient facts alleged to establish tortious property damage. The court also found that the tort action was not barred under the principles established in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69. In *Moorman*, the Illinois Supreme Court held that there can be no recovery for solely economic losses under the tort theories of negligence, strict liability and innocent misrepresentation, subject, however, to limited exceptions.

Although the issue in the instant case is not whether the underlying complaints sufficiently allege a cause of action in tort, we find the Illinois Supreme Court's ruling in *Board of Education* of strong probative value in determining the sufficiency of the allegations in an insurance or contract context. Significant is that the supreme court defined the nature of the damages caused by the asbestos to include

property damage.

The determination of whether the underlying complaints in the instant case sufficiently allege "property damage" as defined in the insurance policies is one of first impression in Illinois. Courts, however, in all other jurisdictions, to date, have found that these asbestos-related building cases all involve "property damage" as defined within the standard insurance policies. (See *Carey-Canada, Inc. v. Aetna Casualty & Surety Co.* (D.D.C. March 31, 1988), No. 85—1640 (memorandum opinion); *Pittsburgh Corning Corp. v. Travelers Indemnity Co.* (E.D. Pa. Jan. 20, 1988), No. 84—3985 (memorandum opinion); *Dayton Independent School District v. National Gypsum Co.* (E.D. Tx. 1988), 682 F. Supp. 1403.

The insurers first contend that the complaints do not allege "property damage" as defined in the various policies. We disagree. A careful review of the underlying complaints reveals that although all of the complaints generally seek damages for cost of inspection, analysis, containment, removal and replacement of the asbestos-containing materials, there are also express allegations of "property damage" within each of the underlying complaints.

■ We find that although some of the complaints may have articulated the resulting property damage more than other complaints, we are in agreement with defendants that since the underlying claims arise from the same set of circumstances, the allegations in any single complaint can be inferred in the other complaints. As we found in *Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 816, the insurer must defend if the insurer has knowledge of true but unpleaded facts which when taken together with the allegations in the complaint indicate that the claim is potentially covered by the policy. "To hold otherwise would allow the insurer to construct a formal fortress of the third party's pleadings and to retreat behind its walls, thereby successfully ignoring true but unpleaded facts within its knowledge that require it, under the insurance policy, to conduct the putative insured's defense." *Associated Indemnity*, 68 Ill. App. 3d at 816-17.

Plaintiff and intervening plaintiffs Aetna and Zurich define "property damage" as follows:

> "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom; or
>
> (2) loss of use of tangible property which has not been physically injured or destroyed providing such loss of use is caused by an occurrence during the policy period."

The policies of Commercial Union and Argonaut provide: " 'Property damage' means injury to or destruction of tangible property." Argonaut also has a separate definition for damages which includes "damages for loss of use of property resulting from property damage."

The language in the policies of Argonaut and Commercial Union was fairly standardized and used within the industry until 1973. (See Arness and Eliason, *Insurance Coverage for "Property Damage" In Asbestos and Other Toxic Tort Cases*, 72 Va. L. Rev. 943, 946 (1986).) Cases construing policy coverage under the language of these pre-1973 types of policies hold that the incorporation of a defective product into tangible property constitutes "property damage" if it results in a diminution of value of the larger property. (See *Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1980), 90 Ill. App. 3d 1106, 1111 ("property damage" as defined in the policy includes tangible property which has been diminished in value due to the incorporation of defective governor regulating pins, irrespective of any actual physical damage to the property).) Further, physical damage to the larger structure need not be alleged, although we find allegations of physical damage to the buildings, in order to find coverage. See *Hauenstein v. St. Paul-Mercury Indemnity Co.* (1954), 242 Minn. 354, 65 N.W.2d 122.

■ We find that the incorporation of the asbestos-containing materials constitutes "property damage" which results in the diminution in value of the greater building structure. As a point of clarification, diminution in value is not "property damage." The incorporation of the defective product is what constitutes "property damage" as defined in these policies.

The insurers argue that the asbestos was not defective since it served the purpose it was intended to serve, which is to provide fire-proof insulation. We find this argument without merit since the intent was to provide insulation without harm to property or human life.

The policies of plaintiff and intervening plaintiffs Aetna and Zurich use the language of post-1973 standardized forms which redefine "property damage" to mean either (1) physical injury to or destruction of tangible property, or (2) loss of use of tangible property not physically injured. Under this standardized version, there is an additional requirement of physical injury under the first prong of the definition.

The insurers maintain that the incorporation of the asbestos into the buildings does not result in physical injury as required un-

der the first prong of the definition. As authority, the insurers primarily rely upon *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.* (7th Cir. 1975), 508 F.2d 417; *Millers Mutual Fire Insurance Co. v. Ed Bailey, Inc.* (1982), 103 Idaho 377, 647 P.2d 1249; and *Federated Mutual Insurance Co. v. Concrete Units, Inc.* (Minn. 1985), 363 N.W.2d 751. We find these cases distinguishable from the instant case.

In *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.* (7th Cir. 1975), 508 F.2d 417, plaintiff sought to recover damages for defective tennis rackets under a complaint which alleged that the supply of rackets was not sufficient to satisfy the demand for such rackets. The court affirmed the district court's finding that plaintiff's damages were essentially for "loss of investment, loss of anticipated profits, and loss of goodwill" and that plaintiff could not recover since these were damages for injury to intangible property. (*Hamilton*, 508 F.2d at 419.) *Hamilton* was a diversity case which applied the law of Ohio, not Illinois. Further, *Hamilton* represents a minority view. In *Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, the Illinois Appellate Court for the Second District disagreed with the *Hamilton* court's finding that "property damage" is dependent upon physical injury to property and, instead, found that there was injury, in the sense of diminution in value, to aerosol cans which contained defective valve assemblies. *Pittway*, 56 Ill. App. 3d at 343.

In *Millers Mutual Fire Insurance Co. v. Ed Bailey, Inc.* (1982), 103 Idaho 377, 647 P.2d 1249, the insured installed defective polyurethane insulation, which resulted in a fire that occurred two years after installation and after the expiration of the policy. The court found that the claimed property damage had not occurred within the policy period. The issue addressed by the court was whether there was an "occurrence" resulting in property damage during the policy period. Unlike the case at bar, the focus of the inquiry in *Millers Mutual* was the time of the occurrence, not whether property damage was sustained. Although we will not reach the issue of trigger of coverage, the exposure to asbestos has been described as a continuing physical harm because of the continuous release of the friable asbestos fibers. See *Dayton Independent School District v. National Gypsum Co.* (E.D. Tx. 1988), 682 F. Supp. 1403, 1409-10.

In *Federated Mutual Insurance Co. v. Concrete Units, Inc.* (Minn. 1985), 363 N.W.2d 751, 756, the Supreme Court of Minnesota

held that the incorporation of defective concrete into a grain elevator, resulting in the decreased market value of the elevator, does not constitute "property damage" under post-1973 insurance policies, since there was no injury to tangible property. We find *Federated Mutual* factually distinct from the instant case because the incorporation of the asbestos did result in injury to tangible property. The incorporation of the asbestos physically altered the property in such a manner so as to render the various structures harmful until abatement procedures may be undertaken. (See *Board of Education of Chicago v. A,C & S, Inc.* (1988), 171 Ill. App. 3d 737.) We, therefore, find that the duty to defend arises under the first prong of the definition.

Even assuming, *arguendo*, that the buildings had not sustained physical injury, defendants may meet the requirements of the second prong of the test since loss of use of the buildings constitutes "property damage" under this prong of the definition. After reviewing the complaints, we find explicit allegations of loss of use due to the incorporation of the asbestos. Loss of use is also implicit in the various complaints in that until abatement procedures have been completed, the buildings or the affected portions of the buildings may be considered unsafe for use.

Next, the insurers argue that even if "property damage" is alleged, the damage was not the result of an "occurrence." The term "occurrence" as set forth in the various policies is defined as an accident including continuous or repeated exposure to conditions which result in property damage or bodily injury, neither expected nor intended from the standpoint of the insured.

The trial court found that the installation of asbestos-containing material into the buildings was no "accident" under a plain meaning of the term. We disagree.

■ The court in *Koehring Co. v. American Automobile Insurance Co.* (7th Cir. 1965), 353 F.2d 993, 996-97, held that even if the installation was intentional, it may be properly characterized as an "accident" or an "occurrence" if the injury sustained was unforeseen by the insured. We find no evidence that the defendants foresaw the detrimental effects of the asbestos prior to installation. Further, any ambiguity with respect to whether the installation was an "occurrence" or an "accident" must be resolved in favor of the insured. (See *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.* (1989), 180 Ill. App. 3d 378, 384.) Accordingly, we find that the alleged "property damage" was the result of an "occurrence" as defined within the various policies.

■ Finally, the insurers maintain that even if the underlying complaints properly allege an "occurrence" resulting in "property damage," various exclusions preclude coverage for the damages sought in the underlying complaints. An insurer has no duty to defend if an exclusionary provision unambiguously precludes coverage. (*Illinois Farmers Insurance Co. v. Preston* (1987), 153 Ill. App. 3d 644, 651.) The applicability of the exclusionary clause must, however, be clear and free from doubt; any doubts will be resolved in favor of the insured, since it is within the exclusionary clause that the insurer attempts to limit the insured's coverage. *United States Fidelity & Guaranty*, 180 Ill. App. 3d at 384.

The first exclusion that the insurers cite is variously known as the "pollution exclusion." Although the exclusionary language in all of the policies is essentially the same, the language in the policy issued by plaintiff is typical. Plaintiff's policy provides:·

"[Coverage will not apply to] bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, gases, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

We must assume, for purposes of construing the language in this exclusion, that there was a discharge, dispersal, release or escape of pollutants which resulted in environmental contamination. (*United States Fidelity & Guaranty Co. v. Specialty Coatings Co.* (1989), 180 Ill. App. 3d 378, 384.) The exclusion does not apply, however, if the contamination was "sudden and accidental." The parties have not cited nor are we aware of any case in which the "pollution exclusion" was applied in litigation involving asbestos contamination. The only case which discusses the possibility of applying the exclusion is *Carey-Canada, Inc. v. Aetna Casualty & Surety Co.* (D.D.C. March 31, 1988), No. 85—1640 (memorandum opinion).

In *Carey-Canada*, the court found that the issue of whether the "pollution exclusion" would apply in an asbestos context is not one that lends itself to summary judgment in that particular case. There were too many outstanding factual questions that had to be answered before the issue could properly be resolved. These questions included whether the "polluting" should be deemed "intentional" as opposed to "accidental"; whether the exclusion only applies to industrial pollution or contamination; and whether the damage caused by

the asbestos was "sudden and accidental." (*Carey-Canada* (memorandum opinion at 32).) We also find that this issue is not the proper subject for summary judgment, aside from the questions posed in *Carey-Canada*, because the exclusion is ambiguous.

■ The court in *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.* (1989), 180 Ill. App. 3d 378, also found this exclusion to be ambiguous and construed it against the insurers. Moreover, the court found that the exclusion should be applied only to "active" polluting conduct or where the polluting was expected and intended. (*United States Fidelity & Guaranty*, 180 Ill. App. 3d at 387.) There is no evidence in the record to indicate that defendants' conduct, in the instant case, was either expected or intended. We do not find that the exclusion would bar coverage under the circumstances of this case.

The insurers next argue that the "business risk exclusions" preclude coverage. These exclusions include the "sistership exclusion," "loss of use exclusion," and the "work product exclusions."

Plaintiff's "sistership exclusion," which is basically the same as the other insurers' provisions, provides:

"[Coverage will not apply to] damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein ***."

■ The applicability of this exclusion in an asbestos context was discussed in *Carey-Canada, Inc. v. Aetna Casualty & Surety Co.* (D.D.C. March 31, 1988), No. 85—1640 (memorandum opinion). The court found the clause inapplicable and cited to Illinois case law (*Marathon Plastics, Inc. v. International Insurance Co.* (1987), 161 Ill. App. 3d 452, 465) in holding that the exclusion applies only where the insured withdraws the product from use or from the market. (*Carey-Canada* (memorandum opinion at 32).) Similarly, since defendants in the instant case have not sought to withdraw asbestos from use or from the market, we also find the exclusion inapplicable.

The "work product exclusions" would also not preclude coverage. Plaintiff's exclusions, which are virtually the same as the other insurers' exclusions, provide:

"[The policy does not apply]

\* \* \*

(n) to property damage to the Named Insured's products

arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith ***."

██ We find that these exclusions would not bar coverage since the underlying complaints do not allege property damage to defendants' own products or to work performed by or on behalf of defendants. In *Carey-Canada*, the court found that these exclusions were not applicable in any asbestos litigation context to the extent that the insureds' own products were not damaged. (*Carey-Canada* (memorandum opinion at 29-31).) "The exclusion would be applicable, thus barring coverage, only if the underlying claimants seek recovery for allegedly defective or faulty asbestos mined and manufactured by plaintiffs. We are aware of no such case." *Carey-Canada* (memorandum opinion at 31).

The last exclusionary provision upon which the insurers rely is the "loss of use exclusion." Plaintiff's provision, which is typical of the provisions in the other insurers' policies, states:

"[The policy will not apply]

\* \* \*

(m) to the loss of use of tangible property which has not been physically injured or destroyed resulting from .

\* \* \*

(2) the failure of the Named Insured's products or work performed by or [on] behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured; but this exclusion does not apply to the loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or [on] behalf of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an insured ***."

██ We find that this exclusion also fails, because it only applies to claims for loss of use of tangible property that has not been physically injured. "Thus this exclusion will fail precisely to the extent that the underlying claimants have alleged property damage as defined in the policies." *Carey-Canada* (memorandum opinion at 34).

The trial court in the instant case also ruled on the duty to indemnify. The court found that since there was no duty to defend,

there was no duty to indemnify. The court did, however, acknowledge that if "property damage" had properly been alleged, a ruling on the duty to indemnify would be premature because there had been no adjudication on the actions which the insurer "should have" defended pursuant to *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 156.

The duty to indemnify arises only when the insured becomes legally obligated for a judgment in the underlying action. (See *Zurich Insurance Co. v. Raymark Industries, Inc.* (1986), 145 Ill. App. 3d 175, 193.) "A declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not then ripe for adjudication." (*Maryland Casualty*, 126 Ill. App. 3d at 156.) We, therefore, find that a ruling on the duty to indemnify is premature to the extent that there has been no adjudication on the underlying complaints.

For the foregoing reasons, the judgment of the circuit court is reversed.

Reversed.

McMORROW and LINN, JJ., concur.