**OWENS–CORNING FIBERGLAS CORPORATION**

v.

**ALLSTATE INSURANCE COMPANY et al.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI90–2521.

Decided Feb. 24, 1993.

*Connelly, Soutar & Jackson, William M. Connelly* and *Steven Smith; Covington & Burling, Mitchell F. Dolin, Jackson Sharman* and *Eric Lasker; Davis & Young Co., L.P.A.,* and *Martin J. Murphy,* for Owens–Corning Fiberglas Corporation.

*Weston, Hurd, Fallon, Paisley & Howley* and *Warren Rosman; Harrington, Foxy, Dubrow & Canter, Mark Flory* and *Melissa Harnett,* for Associated International Insurance Company.

*Spengler, Nathanson, McCarthy & Durfee* and *Renisa Dorner,* for Columbia Casualty Company.

*Haskell & Perrin, Marsha K. Ross* and *Audry S. Hanrahan,* for Columbia Casualty Company.

RICHARD W. KNEPPER, Judge.

This matter is before the court on a motion for summary judgment jointly filed by Columbia Casualty Company ("Columbia") and Associated International Insurance Company ("Associated").[1] Upon review of the parties' memoranda, the relevant evidence, the transcript of the November 19, 1992 oral argument, and the applicable law, the court denies the motion.

## I. *PERTINENT BACKGROUND*

This case is a declaratory judgment action filed by plaintiff, Owens–Corning Fiberglas Corporation ("OCF"), against several of its excess insurers[2] with regard to asbestos-related products liability claims filed against OCF. OCF seeks a court declaration that each of the defendant-insurers is jointly and severally liable to indemnify OCF for asbestos liability it incurs during the relevant coverage period.

In this motion, Columbia and Associated ("the insurers") contend that asbestos fibers (the alleged cause of the underlying bodily injuries) are "pollutants" within the meaning of the insurance policies at issue and that they are relieved from any obligation to indemnify OCF by means of the "pollution exclusion" contained in both policies. These clauses exclude coverage for damages:

"arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

OCF counters that pollution exclusion clauses pertain to dangers caused by the release of by-products during the manufacturing process rather than exposure to the product itself. Alternatively, OCF contends that even if asbestos fibers were within the purview of the pollution exclusion, the second portion of the exclusion, known as the "sudden and accidental" clause, precludes the application of the pollution exclusion.

## II. *STANDARD OF REVIEW*

Summary judgment will be granted only when there is no dispute of material fact, the movant is entitled to judgment as a matter of law, and

---

1. Old Republic Insurance Company ("Old Republic") joined in the motion.

2. An underlying carrier, Aetna Casualty & Surety Company, has since been dismissed from the suit.

construing the evidence most strongly against the movant, reasonable minds can come only to a conclusion adverse to the nonmovant. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. *Id.* Where, as in the instant case, the nonmovant bears the burden of producing evidence on an issue at trial, the nonmovant may not rely on the allegations of its pleadings in response to a summary judgment motion but must affirmatively demonstrate the existence of some triable issue of fact. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. Mere conjecture or speculation presented by the nonmovant, however, is insufficient, as the nonmovant must do more than merely present some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* (1986), 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538.

## III. *DISCUSSION*

The exclusionary clause at issue contains two parts: (1) the exclusion itself and (2) the "sudden and accidental" exception to the exclusion. The court will address these two parts sequentially.

### A. *The Pollution Exclusion*

Columbia and Associated advance a three-part argument to support the proposition that the "plain language" of the exclusionary clause bars coverage for the underlying bodily injury claims. First, they contend that the clause is unambiguous and that no interpretation is necessary. Second, they assert that asbestos constitutes an "irritant," "contaminant," or "pollutant" within the meaning of the clause. Third, Columbia and Associated maintain that the asbestos fibers, the alleged cause of the underlying bodily injuries, were released into the "atmosphere" within the meaning of the clause. For its part, OCF essentially contends that pollution exclusions are "aimed at intentional pollution of the environment" and do not apply to the sales and distribution of finished asbestos products.

■ Initially, if the terms of a contract are definite and certain, construction is unnecessary, and the court must apply the plain meaning of the contract:

"Where the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed by the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150; see, also, *E.S. Preston Assoc., Inc. v. Preston* (1986), 24 Ohio St.3d 7, 10, 24 OBR 5, 8–9, 492 N.E.2d 441, 445.

These principles have been specifically applied to insurance contracts:

"When the language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for this court to resort to construction of the language." *Karabin v. State Auto. Ins. Co.* (1984), 10 Ohio St.3d 163, 166–167, 10 OBR 497, 499, 462 N.E.2d 403, 406 (citing *Travelers Indemn. Co. v. Reddick* [1974], 37 Ohio St.2d 119, 121, 66 O.O.2d 259, 260–261, 308 N.E.2d 454, 455–456).

■ If, however, the terms of the contract are vague, construction becomes necessary, and the object of such construction is to give effect to the intent of the parties:

"A court will resort to extrinsic evidence in its effort to give clear effect to the parties' intentions only where the language is unclear or ambiguous * * *." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 132, 31 OBR 289, 291, 509 N.E.2d 411, 413.

■ When interpreting contract language, moreover, courts theoretically are to employ a basic, commonsense approach:

"[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is *clearly* intended from the face or overall contents of the instrument." (Emphasis added.) *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 245–246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150.

Additionally, exclusions are to be construed strictly against the insurer:

"Where exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not *clearly excluded* from the operation of such contract is included in the operation thereof." (Emphasis added.) *Home Indemn. Co. v. Plymouth* (1945), 146 Ohio St. 96, 32 O.O. 30, 64 N.E.2d 248, paragraph two of the syllabus.

■ In this case, the term "asbestos" is not *clearly* listed in the exclusion. It, furthermore, is far from certain whether asbestos constitutes an "irritant," "contaminant," or "pollutant" within the meaning of the exclusion. Moreover, it is anything but certain that asbestos released from building materials inside or surrounding buildings constitutes an emission into the "atmosphere" within the context of the exclusion. Accordingly, the court finds the clause ambiguous, at least with regard to these issues. Construction of the exclusion is thus required, keeping in mind, of course, that such construction must be strictly against Columbia and Associated:

"[A] contract of insurance prepared by an insurer and in language selected by the insurer must be construed liberally in favor of the insured and strictly against the insurer if the language used is doubtful, uncertain or ambiguous." *Am. Fin.*

*Corp. v. Fireman's Fund Ins. Co.* (1968), 15 Ohio St.2d 171, 173, 44 O.O.2d 147, 148, 239 N.E.2d 33, 35. See, also, *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380 (applying the principle to exclusionary clauses.)[3]

In construing the exclusion, the court will address (1) the clause's historical background; (2) whether asbestos constitutes an "irritant," "contaminant," or "pollutant" within the meaning of the exclusion; (3) whether the manner of the release of asbestos fibers has any bearing on the application of the exclusion; (4) whether the underlying bodily injuries in this case resulted from a release into the "atmosphere" within the meaning of the exclusion; and (5) particular facts in this case.

### 1. *Historical Background*

It is evident that the standard pollution exclusion was developed over twenty years ago in response to insurers' concerns over *environmentally* related losses and liabilities. See, generally, Note, the Pollution Exclusion Clause Through the Looking Glass (1986), 74 Geo.L.J. 1237; *Protective Natl. Ins. Co. of Omaha v. Woodhaven* (1991), 438 Mich. 154, 168–170, 476 N.W.2d 374, 380 (Cavanagh, J., dissenting); *Westchester Fire Ins. Co. v. City of Pittsburg, Kansas* (D.Kan.1991), 768 F.Supp. 1463, 1468–1469, fn. 8 and fn. 9 (citing several cases); *Technicon Electronics Corp. v. Am. Home Assur. Co.* (1989), 74 N.Y.2d 66, 74, 544 N.Y.S.2d 531, 533, 542 N.E.2d 1048, 1050; Ballard & Manus, Clearing Muddy Waters: Anatomy of the Comprehensive General Liability Pollution Exclusion (1990), 75 Cornell L.Rev. 610. It, thus, would appear that general product liability matters were not a chief concern.

### 2. *Asbestos as an Irritant, Contaminant, or Pollutant*

The insurers' position is that asbestos is an irritant, pollutant, or contaminant within the meaning of the exclusionary clauses. The authorities cited in support of this contention, however, are inapposite. In one case, a federal court, indeed, classified asbestos as a pollutant. *United States v. Nicolet, Inc.* (E.D.Pa.1989), 712 F.Supp. 1205. The court, however, made this classification strictly within the meaning of the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), not within the context of an insurance policy's pollution exclusion.

In apparent anticipation of this response, Columbia and Associated refer to other cases in which the courts cited environmental statutes when holding that

---

3. In addition to this rigid rule of construction, Columbia and Associated, in moving for summary judgment, also carry the burden of having not only the exclusion, but also the evidence, construed against them. See *Harless v. Willis Day Warehousing Co., supra,* 54 Ohio St.2d at 66, 8 O.O.3d at 74, 375 N.E.2d at 47.

certain materials fell within the purview of a pollution exclusion. Reliance on these authorities, still, is misplaced for several reasons. First, while *Nicolet, supra,* discusses asbestos but not pollution exclusions, these other cases, conversely, address pollution exclusions but not asbestos. See, *e.g., Hydro Systems, Inc. v. Continental Ins. Co.* (C.D.Cal.1989), 717 F.Supp. 700, affirmed (C.A.9, 1991), 929 F.2d 472 (exclusion applied to styrene gas); *Guilford Indus., Inc. v. Liberty Mut. Ins. Co.* (D.Me.1988), 688 F.Supp. 792, affirmed (C.A.1, 1989), 879 F.2d 853 (exclusion applied to spilled oil).

Second, in *Hydro Systems,* the parties all agreed that the material in question was properly categorized as a "pollutant" or "contaminant." At issue, however, was whether *the manner in which the material was released* affected the applicability of the pollution exclusion. Specifically, *Hydro Systems* seemed to apply a two-part analysis in which it first, relying on California environmental statutes, classified *styrene gas* as a "pollutant." This point was undisputed.[4] Only the *second* matter in the inquiry was contested: whether or not styrene was a "completed product" which would place it within an *exception* [5] to the exclusion.

Third, this court recognizes that *Guilford,* in fact, specifically held that *fuel oil* constitutes an "irritant" or "contaminant" with the meaning of the pollution exclusion. Such a finding, however, is certainly no revelation, as many courts have simply assumed that oil products are contaminants and devoted discussion to other concerns. See, e.g., *Outboard Marine Corp. v. Liberty Mut. Ins. Co.* (1991), 212 Ill.App.3d 231, 156 Ill.Dec. 432, 442–443, 570 N.E.2d 1154, 1164–1165; *Polkow v. Citizens Ins. Co. of Am.* (1991), 438 Mich. 174, 476 N.W.2d 382; *Vantage Dev. Corp., Inc. v. Am. Environment Technologies Corp.* (1991), 251 N.J.Super. 516, 598 A.2d 948, 953 (" * * * the only issue which several courts have viewed as preserved relates to whether a particular substance constitutes a contaminant, pollutant, or irritant. * * * That potential issue is not implicated in this case.").

On the other hand, the few authorities which have directly addressed the issue of *asbestos* compel the court to rule that asbestos is not an "irritant," "pollutant," or "contaminant" within the meaning of the standard pollution exclusion. Plentiful authority exists in support of the proposition that the exclusion is generally aimed at the release of toxic waste causing environmental damage. For instance, in *Technicon Electronics Corp. v. Am. Home Assur. Co., supra,* 74 N.Y.2d 66, 544

---

4. The insured's sole contention was that "the exclusion does not apply because the styrene emissions fall within the 'products-completed operations hazard' exception to the exclusion." *Hydro Systems* at 702. This exception does not appear in the pollution exclusions in either the Columbia or Associated policy.

5. See fn. 4, supra.

N.Y.S.2d 531, 542 N.E.2d 1048, the court opined that, for the exclusion to apply, the complaint "must allege a discharge, dispersal, release, or escape of a toxic or hazardous waste which has actually resulted in pollution." 74 N.Y.2d 66, 74, 544 N.Y.S.2d 531, 533, 542 N.E.2d 1048, 1050.

In the recent case of *Continental Cas. Co. v. Rapid Am. Corp.* (1992), 177 A.D.2d 61, 581 N.Y.S.2d 669, the court, building on *Technicon,* concluded that:

"The underlying complaints before us do not allege environmental pollution of land, a water course, or the atmosphere, but simply bodily injury sustained by an ultimate user of a product." *Id.,* 177 A.D.2d at 68, 581 N.Y.S.2d at 672.

In *Maryland Cas. Co. v. W.R. Grace & Co.* (S.D.N.Y.1991), 794 F.Supp. 1206, 1229, the court shared a similar perspective:

"[N]othing in the provision suggests that asbestos falls within its terms. One would not usually associate asbestos with the substances listed in the exclusion, namely, smoke, fumes, or waste. * * *. Those substances bear a closer relation to industrial pollution, the usual subject of the ordinary pollution exclusion."

To be certain, some courts have explicitly classified or implicitly treated asbestos as an "irritant," "contaminant," or "pollutant" within the meaning of the exclusion. See *Great N. Ins. Co. v. Benjamin Franklin Fed. S. & L. Assn.* (D.Ore.1990), 793 F.Supp. 259; *United States Fid. & Guar. Co. v. Wilkin Insulation Co.* (1991), 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926. These holdings, however, are supported by neither case law nor a compelling rationale. For instance, the *Great Northern* court simply asserted that "[a]sbestos is a solid irritant," *id.* at 263, and that "[i]t is also a contaminant within the meaning of the policy," *id.* at 264, with no further discussion. Similarly, the *Wilkin* court assumed that asbestos was a contaminant or pollutant, again with no justification.[6] 144 Ill.2d at 78–79, 161 Ill.Dec. at 287, 578 N.E.2d at 933. These authorities, accordingly, are of little value in this analysis. This court, therefore, finds that asbestos cannot be categorized as an "irritant," "contaminant," or "pollutant," as a matter of law, within the meaning of the exclusion.

### 3. *Manner of Release*

Assuming, *arguendo,* that asbestos is an "irritant," "contaminant," or "pollutant" within the meaning of the exclusion, the inquiry turns to whether the

---

**6.** Likewise, at the intermediate level, the appellate court stated, again with no supporting discussion:

"We must assume, for the purposes of construing the language in this exclusion that there was a discharge, dispersal, release, or escape of *pollutants* which resulted in environmental contamination." (Citation omitted and emphasis added.) *United States Fid. & Guar. Co. v. Wilkin Insulating Co.* (1989), 193 Ill.App.3d 1087, 1098, 140 Ill.Dec. 907, 914, 550 N.E.2d 1032, 1039.

manner in which the substance is released has any bearing on the application of the exclusion. Columbia and Associated argue that the issue is irrelevant, *i.e.*, that if such a substance causes injury, the exclusion applies regardless of whether the material was emitted as a by-product of the manufacturing process, whether the material itself was a finished product, or, as in this case, whether the material was a component of a finished product. OCF rejects this contention and claims that the pollution exclusion was intended to apply only to waste materials emitted as by-products of the manufacturing process.

On balance, various courts have, indeed, hinged the application of the pollution exclusion on the manner in which the material at issue was released. For instance, in *United States Fid. & Guar. Co. v. Wilkin Insulation Co., supra,* the appellate court reasoned that the exclusion should apply only to " 'active' polluting conduct or where the polluting was expected and 'intended.' " (Citation omitted.) 193 Ill.App.3d 1087, 1099, 140 Ill.Dec. 907, 914, 550 N.E.2d 1032, 1039. Another court not only made this active/passive distinction but added that the exclusion does not apply to material emitted from finished products. See *Continental Cas. Co. v. Rapid–Am. Corp., supra,* in which the court held that the exclusion's reach "extends to environmental pollution occasioned by intentional discharge of a pollutant in the course of manufacturing or distribution activities by the producer of a product, but does not embrace the harm inflicted by a product fully and finally launched into stream of commerce, and over which the manufacturer no longer exercises any control." 177 A.D.2d at 69, 581 N.Y.S.2d at 673.

These findings are buttressed by a compelling rationale, as illustrated by the following hypotheticals:

"If a child at a city pool complains about the chlorine in his or her eyes, the causative factor is a chemical but the city has not polluted the environment. If a fire hydrant sprays water on a passer-by, that may be an 'irritant' to the person, but again the municipality responsible for the fire hydrant has not polluted the environment. If a city resident complains that the exhaust fumes from a city vehicle caused him or her breathing difficulty, the injury may be real but the city has not engaged in pollution." *Westchester Fire Ins. Co. v. City of Pittsburg, Kan., supra,* 768 F.Supp. at 1470.

See, also, *Park–Ohio Industries, Inc. v. Home Indemn. Co., infra:*

"For example, under [the insurer's] reading, the pollution exclusion would deny coverage to an automobile manufacturer for claims brought by motorists who had been injured, while in an automobile, by fumes from a defective exhaust system." (Guy, J., dissenting.) *Id.* at 1224.

The United States Sixth Circuit Court of Appeals, however, has recently rejected both the "active-passive" and "finished product" distinctions. See *Park–Ohio Industries, Inc. v. Home Indemn. Co.* (C.A.6, 1992), 975 F.2d 1215:

"The pollution exclusion places no limitation on how the discharge is to be made or by whom. 'The discharge' applies to *any* discharge, and there is nothing in the facts of this case which bring into question the meaning of 'the discharge' or who must make the discharge. In a sense, the pollution exclusion follows the product, as do all the terms of the policy." (Emphasis added.) *Id.* at 1219.[7]

As Sixth Circuit authority is more persuasive than either New York or Illinois state rulings, this court holds that the manner in which a pollutant, irritant, or contaminant is released, alone, has no bearing on the application of the standard pollution exclusion.[8]

### 4. The "Atmosphere"

■ Turning to the "atmosphere" issue, OCF contends that (1) even if asbestos is an "irritant," "contaminant," or "pollutant" and (2) even if the manner of release is irrelevant, application of the exclusion is still improper because the asbestos fibers were not released "into the atmosphere" within the meaning of the exclusion. Columbia and Associated reject this allegation and, in support of

---

**7.** Despite the Sixth Circuit's holding, *Park–Ohio* is distinguishable from this case on other grounds. First, *Park–Ohio* applied not to asbestos but rather to the product of rubber combustion. In fact, the *Park–Ohio* injureds alleged that this product resembled "soot, smoke, fumes, dust pollutants, and other particulates," *id.* at 1219, substances which bear a closer relation to industrial pollution than asbestos. Second, *Park–Ohio* merely concluded that the substance at issue was released into the "atmosphere" without any supporting discussion. Thus, although *Park–Ohio* requires this court to reject any "finished product" or "active-passive" distinctions, it does little to assist this court in assessing the "irritant, pollutant, or contaminant" or "atmosphere" portions of the clause.

**8.** In apparent response to *Park–Ohio, supra,* OCF refers the court to *Ekleberry, Inc. v. Motorists Mut. Ins. Co.* (July 18, 1992), Crawford App. No. 3–91–39, unreported, 1992 WL 168835. As OCF acknowledges, *Ekleberry* discusses not the exclusion in the case at bar but rather a far broader pollution exclusion which, by 1986, had become the industry standard. In *Ekleberry,* the court held that a carrier was not entitled to judgment based on the newer exclusion. Moreover, the court stated that, were the pre–1986 policy in effect, there is "no question" that there would be coverage. *Id.* at 3. Based on these two findings, OCF concludes that if summary judgment is denied via a broader, post–1986 exclusion, the same finding is required in this case, which involves a narrower clause. Problematic with this suggestion is that, although *Ekleberry* speculated that the pre–1986 policy would provide coverage, the court did not support the statement with any discussion. Therefore, this court is left with no guidance as to whether the court even considered (1) the definition of "pollutant," "irritant," or "contaminant," (2) any "active/passive" or "finished product" distinction, (3) the term "atmosphere," or perhaps even (4) application of the "sudden and accidental" clause. Thus, while Ohio courts are more persuasive than federal courts, *Park–Ohio,* a Sixth Circuit case which specifically discusses the exclusion at issue must be weighed more heavily than unsupported speculation offered in an unreported opinion from another state district.

their motion, offer (1) a citation to Webster's II Riverside Dictionary, (2) criticism of authority on point, and (3) an inapposite Michigan Supreme Court case.

The cornerstone of the insurers' argument is the aforementioned Webster's Dictionary passage, which, according to the insurers, defines "atmosphere" as "1. The gaseous mass surrounding a celestial body, especially the earth. 2. Environment: surroundings." See the insurers' brief of April 23, 1992, at 5.[9] Observing that the Webster's lexicographers do not exempt from this broad definition any gaseous mass inside of or immediately surrounding a building, Columbia and Associated conclude that the release of asbestos fibers into the air inside a building satisfies the "atmosphere" requirement of the pollution exclusion.

The few authorities which have discussed "atmosphere" in the asbestos bodily injury insurance context have rejected such common dictionary definitions in favor of a narrower construction excluding building interiors. See, e.g., *Continental Cas. Co. v. Rapid–Am. Corp., supra,* 177 A.D.2d at 67, 581 N.Y.S.2d at 672: "In our view, the resolution of this case is not to be found in this kind of lexical tomography." To this end, one California court ruled that "the release of asbestos fibers in the workplace or home cannot reasonably be construed to be a release into the 'atmosphere.'" *Asbestos Ins. Coverage Cases* (Jan. 24, 1990), Cal.Super. No. 1072, unreported, at 18. The same court reiterated this principle in *Flintkote Co. v. Am. Mut. Liab. Ins. Co.* (Oct. 14, 1992), Cal.Super. No. 808–594, unreported:

"The court concludes that the plain language of the exclusion was not meant to include the air enclosed within a given structure. Consequently, it does not apply to the alleged contamination of which occurred within the confined space of a building." *Id.* at 110.

The Supreme Court of Illinois, moreover, has held that, in addition to a building's interior confines, a building's immediate surroundings are also beyond the scope of the exclusion:

"The ordinary, popular meaning of the phrase 'the atmosphere' connotes the external atmosphere which surrounds the earth and consists of the air and any gases or particles therein. The underlying complaints allege property damage that arose from the release of a contaminant or pollutant within the buildings. We do not understand 'the atmosphere' to mean the multiple, diverse environs *or surroundings* of individual buildings." (Emphasis added.) *United States Fid. &*

---

**9.** The court accepts the insurers' account of the Webster's Riverside II definition, as it tracks closely with the definition set forth in Webster's New Collegiate Dictionary (1977) 71: "1a: a gaseous mass enveloping a celestial body (as a planet) b: the whole mass of air surrounding the earth * * *."

*Guar. Co. v. Wilkin Insulation Co., supra,* 144 Ill.2d 64, 79, 161 Ill.Dec. 280, 287, 578 N.E.2d 926, 933.

Additionally, the *Wilkin* court opined that this conclusion becomes inescapable when one reads the entire exclusionary clause:

"When the clause 'into or upon land, the atmosphere or any water course or body of water' is read as a whole, as it must be, it is readily apparent that the pollution exclusion applies to property damage arising from the discharge of pollution into the external environment or onto some part thereof, rather than the release of asbestos fibers within a building." *Wilkin, supra,* 144 Ill.2d at 80, 161 Ill.Dec. at 287, 578 N.E.2d at 933.

Similarly, the *Flintkote* court reasoned:

"This Court agrees that the word 'atmosphere' must be given its ordinary meaning and must be interpreted in conjunction with the other words used in the exclusion. It appears that the pollution exclusion was intended to address environmental pollution, that is the pollution or contamination of the external environment." *Flintkote, supra,* at 111.

For their part, Columbia and Associated first attempt to distinguish *Wilkin* on the grounds that the underlying claims in that case pertained to property damage and not bodily injury. The court, however, finds that this distinction has no bearing on the construction of the term "atmosphere." Further, any significance in the distinction is diminished by the fact that both *Asbestos Insurance Coverage Cases* and *Flintkote* stemmed from bodily injury claims.

Second, Columbia and Associated rely on *Protective Natl. Ins. Co. of Omaha v. Woodhaven, supra,* 438 Mich. 154, 476 N.W.2d 374. In *Woodhaven,* the issue was whether the standard pollution exclusion relieves an insurer's duty to defend or indemnify a city in an underlying action for damages allegedly resulting from exposure to pesticides sprayed by the city as part of its outdoor pest control services. The Supreme Court of Michigan ruled in the insurer's favor, stating, *inter alia,* that the dispersal of the insecticide was "into the atmosphere." [10] This finding, of course, is self-evident and of no application to a situation, such as this one, involving the release of materials indoors. The court, therefore, finds that the release of asbestos fibers in the case at bar cannot be classified as one "into the atmosphere" as a matter of law.

---

**10.** The bulk of the *Woodhaven* discussion, however, pertained to (1) whether insecticide is an irritant, contaminant, or pollutant within the meaning of the exclusion and (2) whether the "sudden and accidental" exception to the exclusion had any bearing. The fact that the pesticide was released into the "atmosphere" was simply assumed by the court and, in fact, was not contested by either party.

## 5. *Miscellaneous Factors*

 Additionally, upon reviewing the factual setting in this particular case, one could infer that the parties intended asbestos to be covered. Specifically, the record indicates that earlier Columbia and Associated policies had, on some occasions, limited asbestos coverage, and on other occasions, expressly excluded "asbestos products" coverage. It, furthermore, is clear that express, asbestos exclusionary clauses have for years been commonly used in the insurance industry. Based on this record, one could certainly infer that, had Columbia and Associated intended to exclude asbestos from coverage, they would have done so with a simple insertion of an express asbestos exclusion. Since, however, (1) asbestos is not clearly listed in the exclusionary clause and (2) both the evidence and the policy are to be construed in OCF's favor, the court finds that the pollution exclusion cannot be applied to preclude coverage as a matter of law.

## B. *The "Sudden and Accidental" Exception*

The standard pollution exclusion is qualified by what is known as the "sudden and accidental" exception, which provides that the aforementioned pollution exclusion will *not* apply (*i.e.*, there *will* be coverage) if the irritant, contaminant, or pollutant's " * * * discharge, dispersal, release, or escape is *sudden and accidental*." (Emphasis added.) At issue, of course, is, even if the pollution exclusion is otherwise applicable (*i.e.*, even if the court finds that the underlying bodily injuries resulted from the "release" of an "irritant," "contaminant," or "pollutant" into the "atmosphere" within the meaning of the clause), whether such release was "sudden and accidental." OCF maintains that it was; Columbia and Associated claim that it was not.

The "sudden and accidental" exception has been a longtime topic of discussion in a seemingly endless array of federal and state court opinions, law review articles and notes, and insurance journals and treatises. Suffice it to summarize that two distinct interpretations of the exception have emerged. One line of cases construes "sudden and accidental" as meaning "neither expected nor intended." Another view stresses a temporal element and applies the exception only to situations in which contaminants are released immediately, unexpectedly, and not over a long period of time.

The Supreme Court of Ohio has recently put the matter to rest in this jurisdiction, sparing this court the need to launch a tiresome discussion on the matter. In *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 597 N.E.2d 1096, a unanimous bench adopted the latter view:

" '[S]udden' means happening quickly, abruptly, or without prior notice. * * *

"Second, * * * unless 'sudden' is interpreted to have a temporal aspect, the word does not add anything to the phrase 'sudden and accidental.'" *Id.* at 666, 597 N.E.2d at 1102.

▬ In its most recent brief, OCF acknowledges that *Hybud* does not help its cause but nonetheless argues that the exception is inapplicable because Columbia and Associated "have failed to establish that the claims do not involve 'sudden and accidental' injurious *exposures*." (Emphasis added.) See OCF's brief of Nov. 19, 1992, at 8. OCF apparently implies that the "sudden and accidental" phrase applies to the injureds' *exposure* to the asbestos fibers, not the actual *release* of the substance. OCF, however, cites no authority in support of this intriguing perspective, and this court's independent research efforts have, in fact, found none. A plain reading of this unambiguous [11] exception requires the court to apply it to "such discharge, dispersal, release, or escape" and not to the claimants' exposure to the substance. OCF's position, therefore, is without merit.

As previously discussed, however, the pollution exclusion itself cannot be applied as a matter of law. Thus, any decision as to any exception to it is of no effect.

## IV. *SUMMARY*

To obtain summary judgment as to the pollution exclusion, Columbia and Associated must show, as a matter of law, that (1) asbestos fibers are an "irritant," "contaminant," or "pollutant" within the meaning of the exclusion, (2) the manner in which the asbestos fibers were "released" is immaterial to the application of the exclusion, *and* (3) the release of the fibers was, indeed, "into the atmosphere." The court, reading the clause as a whole and construing the policy language and the evidence against the insurers, finds that Columbia and Associated have satisfied only the second requirement. Accordingly, the exclusion does not apply, and the insurers' motion for summary judgment is denied.

### *JOURNAL ENTRY*

It is ORDERED, ADJUDGED and DECREED that the motion for summary judgment based on pollution exclusion filed by defendants Columbia Casualty Company and Associated International Insurance Company is not well taken and is, therefore, denied.

*Motion denied.*

---

11. See *Hybud* at 666, 597 N.E.2d at 1102–1103.